RICHARD UDALL, impleaded with EDWARD M. L. KENNEY, appellant,

*against*

ELIZA S. KENNEY, respondent.

The wife's equity, as it is called, cannot be disposed of by the husband, without first making a suitable provision for her support.

Though the wife should join the husband in the assignment of it, this will not render the disposition valid, she being an infant.

The only way in which she can herself dispose of it, is by consent in court, or out of court, on an adequate provision being made for her :

Otherwise as to a wife's choses in possession, or in action. Of the former the husband is absolute owner by the marriage ; and so of the latter, when reduced into his possession.

It seems, that when the property of the wife is the subject of an action at law, equity will not interfere, by injunction or otherwise, so as to prevent the husband getting possession till he make proper provision for his wife.

But if the aid of a court of equity be necessary to enable the husband to get possession of his wife's property, the court will see, when he comes there for that purpose, that he first make a suitable provision for her ; or it will interfere, at her suit, to prevent his getting possession, in any way, till such provision is made.

So of the general assignee of the husband, by his own act, with or without valuable consideration, or by operation of law.

So of a specific assignee for valuable consideration, with or without notice of the wife's equitable claim.

Cases on the three last heads considered in chronological order, by SAVAGE, Ch. J.

In all these cases, the extent of the provision for the wife is properly the subject of reference to a master, and must depend on circumstances ; and the husband, or his assignee, is entitled to what remains after provision made.

The general rule is, that the interest or income of the wife's equitable property, may be received by the husband, while he lives with and maintains her.

But if he neglects to do this; or if he ran away with and married her while she was a ward of the court; or has shewn incapacity to manage his concerns, or a disposition to squander his wife's property, the court will direct the interest to be paid to her, or to a trustee for her benefit.

While, however, he has a right to receive the interest or income of his wife's property, he may transfer that right to another for valuable consideration, who shall not be holden to account to the wife, especially if such right of the husband or assignee be sanctioned by an order of court.

It seems, that inadequacy of price, alone, is not a sufficient ground for setting a contract aside.

Bank stock was settled by a father, by deed declaring a trust in favour of his infant daughter, and by an order of the court of chancery was placed in the hands of the assistant register of that court, as trustee to execute the trust in her favour. She married, and an order of the court was made to pay the dividends of the stock to the husband. Within a year after the marriage, and while she was an infant, she and her husband transferred the stock for a valuable consideration, the assignee knowing at the same time of the deed of settlement and the infancy of the wife; whereupon an order was made, that the dividends should thereafter be paid to the assignee till the wife came of age, or the further order of the court. On a bill filed, by the wife, against the husband and assignee, the court of chancery declared the assignment null and void, so far as it respected the wife's equity; and decreed that the assignee should account for the dividends received by him under the order. And, the husband having misbehaved himself, the dividends were directed to be paid to the wife, until she came of age, with liberty for her then to apply for such suitable provision, out of the property, as might be determnied on the usual reference to a master. On appeal to the court of errors, the decree was affirmed, except so much as directed the assignee to account for dividends received anterior to the decree; and the wife in the mean time having come of age, the record was remitted with directions to the court below to make the proper reference, and determine what would be a suitable provision; the overplus, if any, to be paid to the assignee. And the chief justice intimated, in delivering the opinion of the court, that if the wife had no fortune beside the stock, which was $8000, the whole would not exceed a reasonable provision.

APPEAL from the Court of Chancery. The pleadings and proofs with the decree, and the late Chancellor's reasons in its support, are stated in the report of the same case, as it stood in the Court below, under title of *E. S. Kenney* v. *Udall & Kenney*, (5 *John. Ch. Rep.* 464.) All the facts material to the view taken of the case here, will be found in the opinion of SAVAGE, Chief Justice, who delivered the opinion of this Court.

*J. V. Henry*, for the appellant, premised, that under the impression of duty which the Chancellor felt to protect this young married woman, he had gone very great lengths ; and had cut down every thing, even *his own order* for the payment of the dividends. He contended that the case of *The Earl of Salisbury* v. *Newton*, (1 *Eden's Rep.* 370,) cited by the Chancellor, was distinguishable from the present. Notwithstanding *Like* v. *Beresford*, (3 *Ves.* 506,) which he considers as settling the question of the wife's right to her equity against a particular assignee, for valuable consideration, he admits that it was a litigated point in *Wright* v. *Morley*, (11 *Ves.* 12.) In *Jewson* v. *Moulson*, (2 *Atk.* 417,) the wife had never been in the receipt of the fund. The cases cited by the Chancellor of a claim to the wife's equity by the assignees of a bankrupt husband, will of course not be relied on, as they go upon the ground that the assignment is general, and by operation of law. *Beresford* v. *Hobson*, (1 *Madd. Ch. Rep.* 262) goes farther for the wife than any other case ; but even there she did not get the whole ; whereas all is here declared void by the Chancellor, in the face both of the assignment and his own order.

That this assignment cannot be rescinded for inadequacy of price, or as a fraudulent, or unconscionable bargain, he cited *Newland on Contracts*, 357-8, and 360-5 ; *Franklin* v. *Osgood*, 14 *John.* 559, *per Platt, J.* ; 1 *Fonbl. B.* 1, *ch.* 2, *s.* 9 ; 1 *Mad. Ch.* 98.

He then stated the following points ; and cited and commented upon the authorities which follow them respectively :

1. That the stock in question was a vested interest in the wife, subject to the limitation over on the contingency of her dying without issue before 21. And the husband having, at law, an absolute right to all the wife's personal estate in possession, and a qualified right to her choses in action, had therefore power to dispose of the stock. (1 *Roper on Legacies*, 182, 183, 184, 203. *Lumb* v. *Milnes*, 5 *Ves.* 517, 519. *Com. Dig. Baron and Feme*, (E. 3.) *Sir Edward Turner's case*, 1 *Vern.* 7. *Pitt* v. *Hunt*, *id.* 18. *Tudor* v. *Samyne*, 2 *Vern.* 270. *Duke of Chandos* v. *Tal-*

bot, 2 P. *Wms.* 608.   *Lord Carteret* v. *Paschal*, 3 P. *Wms.*
199.   *Bates* v. *Dandy*, 2 *Atk.* 207.   *Jewson* v. *Moulson*, id.
417.   *Hawkyns* v. *Obin*, id. 549.   *Grey* v. *Kentish*, 1 *Atk.*
280.   *Countess of Strathmore* v. *Bowes*, 1 *Ves. Jun.* 28.)

2. Such disposition being made by the husband, the wife
cannot be admitted to impeach it, on the ground that it was
unfairly or improperly obtained.   That right belongs to the
husband only, or those claiming under him ; and as he does
not seek to do this, nor even unite with his wife as complain-
ant in the cause, the Court ought not to interfere to set it
aside.

3. The Court does not interfere with the legal rights of
the husband, but will suffer him, if he can without its aid, to
obtain at law the possession of her estate.   The stock in
question was legal property.

An action would have lain against the husband for its val-
ue, had he refused to complete the transfer.   (*Matter of Mor-
ris* v. *The Mechanic's Bank*, 10 *John.* 484-5.   *The King* v.
*The Bank of England, Doug.* 523.)

4. The objection that the wife is a ward of the Court, is
unfounded ; the wardship having ceased on her marriage ;
and the Court below having even acted on that principle, by
directing the dividends to be paid to *Kenney* in his charac-
ter of husband.   (*Mendes* v. *Mendes*, 1 *Ves. Sen.* 89, 91, *per
Lord Hardwicke, C.*)

5. That even if the stock was equitable property, yet a
specific assignment of it, by contract, for a valuable consid-
eration is valid, and not subject to an equity of the wife, for
a provision.   (*Sir Edward Turner's case*, 1 *Vern.* 7.   1 *Eq.
Abr.* 58, *pl.* 2, *S. C.   Pitt* v. *Hunt*, 1 *Vern.* 18. 1 *Eq. Abr.*
58, *pl.* 3, *S. C.   Povey and Browne* v. *Amhurst et al. Gilb.
Eq. Rep.* 80. 2 *Eq. Abr.* 132, *S. C.   Duke of Chandos* v.
*Talbot*, 2 *P. Wms.* 608.   *Bates* v. *Dandy*, 2 *Atk.* 207.
*Hawkyns* v. *Obin*, id. 549.   *Grey* v. *Kentish*, 1 *Atk.* 280.
*Saddington* v. *Kinsman*, 1 *Br. Ch. Rep.* 51.   *Worsal* v.
*Marlar*, 2 *Dick.* 647.   *Earl of Thomond* v. *Earl of Suffolk*,
1 *P. Wms.* 469.   *Clinton* v. *Hooper*, 1 *Ves.* 173.   *Wright*

Udall
v.
Kenney.

v. *Morley*, 11 *Ves.* 12.    *Hyde* v. *Price*, 3 *Ves.* 437.  *Newls on Contr.* 131-2.)

6. But if otherwise, the equity is only to part and not to the whole ; and the full amount of the principal advanced by the appellant, with the interest thereon, ought, at least, to be re-imbursed him. (*Packer* v. *Wyndham*, *Prec. in Ch.* 412.   *Squib* v. *Wyn*, 1 *P. Wms.* 378.   *Lord Carteret* v. *Paschal*, 3 *id.* 197, 199.   *Jewson* v. *Moulson*, 2 *Atk.* 417. *Earl of Salisbury* v. *Newton*, 1 *Eden's Rep.* 370.   *Franco* v. *Franco*, 4 *Ves.* 515, 529.  *Pryor* v. *Hill*, 4 *Br. Ch. Cas.* 138. *Burdon* v. *Dean*, 2 *Ves. Jun.* 607.   *Oswell* v. *Probert*, *id.* 680.   *Brown* v. *Clark*, 3 *id.* 166, 168.   *Pringle* v. *Hodgson*, *id.* 617.   *Macaulay* v. *Phillips*, 4 *id.* 15.   *Lumb* v. *Milnes*, 5 *id.* 517.   *Lady Elibank* v. *Montolieu*, *id.* 737.   *Wright* v. *Morley*, 11 *Ves.* 12.)   The counsel said, that these cases shew, not only the rights of the husband in the wife's property generally, but also as to the wife's equity, from them it would appear never to have been doubted, either in the case of general or particular assignees of the husband, that they shall hold subject only to a reasonable provision for the wife.

7. That the appellant is, at any rate, entitled to the dividends on the stock which were directed to be paid to the husband, free of all her claims until she attained 21.

*Talcott*, (Attorney General) & *B. F. Butler*, for the respondent, insisted upon the following points in support of the decree, and cited and commented upon the authorities following them respectively :

I. The deed of settlement executed by *Hewitt*, the father of the respondent, directing the dividends as they accrued to be paid to her during her minority and the stock to be transferred to her at the age of 21, clearly contemplated a personal enjoyment by her of the stock; and, therefore, the assignment was in direct violation of the trusts declared by the deed of settlement, and consequently void. (*Hyde* v. *Price*, 3 *Ves.* 437 ; recognized as never having been questioned in *Meth. Epis. Church* v. *Jaques*, 3 *John. Ch. Rep.* 103. *Stone* v. *Lidderdale* & *others*, 2 *Anstruther*, 533, where the assignment of an officer's half pay was held void both in Equi-

ty and at law. *Sugden on Powers*, 111, 112. *Clancy's Rights of Women.* 52, 53, 382, 383, 384. *Roper on Revocations, &c. with Tracts upon the law of Baron and Feme,* 230. 301.) The case of *Jaques* v. *Methodist Episcopal Church,* (17 *John. Rep.* 548) the counsel said, merely sets up the general power of the wife to dispose of her separate property, without denying that a trust may be limited to her in such terms as to take away that right.

II. The assignment was also void, as against the equitable right of the respondent to have the stock secured for her separate use. This right, usually called *the wife's equity,* is perfectly reasonable and just; is well understood in Courts of Equity; and has been uniformly admitted and administered by them for more than a century.

The counsel said there were four classes of cases in support of this point :

1. Of the wife's equity as against her husband : (*Witham* v. *Waterhouse, Toth.* 91. *Ash* v. *Forrest, id.* 116. *Gibbons* v. *Moulton, Rep. Temp. Finch,* 346. *id.* 361. *id.* 367. *Mico* v. *Powell et ux.* 1 *Vern.* 39. *Oxendon* v. *Oxenden,* 2 *Vern.* 493. *Harrison* v. *Buckle,* 1 *Str.* 239. *Gardener* v. *Walker, id.* 503. *Winch* v. *Page, Bunb.* 86. *Milner* v. *Colmer,* 2 *P. Wms.* 638. *Adams* v. *Pierce,* 3 *id.* 11. *Brown et ux.* v. *Elton, id.* 202. 1 *Eq. Abr.* 64, (*G*) *and the cases. there cited. Bond* v. *Simmons,* 3 *Atk.* 20. *Tomkyns* v. *Ladbroke,* 2 *Ves. Sen.* 591, 593. *Jewson* v. *Moulson,* 2 *Atk.* 417. *Ex parte Coysegame,* 1 *Atk.* 192. *Grey* v. *Kentish, id.* 280. *Meals* v. *Meals,* 1 *Dick.* 373. *Ellis* v. *Ellis,* 1 *Suppl. to Vin. Abr.* 475, (*F*) *pl.* 4. *Roberts* v. *Roberts, id.* 576, (*F*) *p.* 5. 2 *Cox,* 422, *S. C. Clinton* v. *Hooper,* 1 *Ves. Jun.* 173, 181, 185. *Lady Elibank* v. *Montolieu,* 5 *Ves.* 737. *Murray* v. *Lord Elibank,* 10 *Ves.* 84. 13 *Ves.* 1, *S. C. Carr* v. *Taylor,* 10 *Ves.* 574. *Howard et ux.* v. *Moffatt,* 2 *John. Ch. Rep.* 206. *Glen et ux.* v. *Fisher,* 6 *id.* 33. *Davison* v. *Atkinson,* 5 *T. R.* 434.)

2. Of the wife's equity as against the general assignees of the husband: (*Vandenanker* v. *Desbrough,* 2 *Vern.* 96. *Parker* v. *Dykes,* 1 *Eq. Abr.* 54, (*B*) *Jacobson* v. *Peer Williams, id.* 1 *P. Wms.* 382, *S. C. Grey* v. *Kentish,* 1

*Atk.* 280. *Ex parte Coysegame, id.* 192. *Worsal* v. *Marlar,* 2 *Dick.* 647. 1 *Cox,* 153, *S. C. under title of Warrall* v. *Marlar, and Bushnan* v. *Pell. Pryor* v. *Hill,* 4 *Br. Ch. Cas.* 138. *Bosvil* v. *Brander,* 1 *P. Wms.* 458. *id.* 459, *note* (1) *Burdon* v. *Dean,* 2 *Ves. Jun.* 607. *Oswell* v. *Probert, id.* 680. *Brown* v. *Clark,* 3 *id.* 66. *Freeman* v. *Parsley, id.* 421. *Lumb* v. *Milnes,* 5 *id.* 517. *Carr* v. *Taylor,* 10 *id.* 574. *Mitford* v. *Mitford,* 9 *id.* 87.)

3. Of the wife's equity as against a voluntary particular assignment : (*Clancy's Rights of Women,* 267. *Jewson* v. *Moulson,* 2 *Atk.* 420, *per Lord Hardwicke* )

4. As against the specific assignee for a valuable consideration : (*Saddington* v. *Kinsman,* 1 *Br. Ch. Cas.* 44. *Povey* v. *Brown, Prec. in Ch.* 325. *Jewson* v. *Moulson,* 2 *Atk.* 417. *Pope* v. *Crashaw,* 4 *Br. Ch. Cas.* 326. *Like* v. *Beresford,* 3 *Ves.* 506, 512. *Macaulay* v. *Philips,* 4 *Ves.* 19. *Wright* v. *Morley,* 11 *Ves.* 17. *E. S. Kenny* v. *Udall and Kenny, the decision appealed from,* 5 *John. Ch. Rep.* 464. *Haviland* v. *Myers,* 6 *id.* 25. *Haviland* v. *Bloom, id.* 178. *Earl of Salisbury* v. *Newton,* 1 *Eden's Rep.* 370.)

III. The equity of the respondent is materially fortified by the circumstance, that her marriage was clandestine, at a time when she was of a very tender age, a ward of the Court of Chancery, and her husband a bankrupt. (*Butler* v. *Freeman, Ambl.* 301. *Eyre* v. *Countess of Shaftsbury,* 2 *P. Wms.* 118. *Stackpole* v. *Beaumont,* 3 *Ves.* 98, *per Ld. Chancellor. Like* v. *Beresford, id.* 506. *Laws N. Y. sess.* 38, *ch.* 106, *s.* 1. *Call* v. *Coults,* 1 *Ves. & Bea.* 303. *Stevens* v. *Savage,* 1 *Ves. Jun.* 154. *Winch* v. *James,* 4 *Ves.* 386. *Chassaing* v. *Parsonage,* 5 *Ves.* 15. *Wells* v. *Price,* 5 *Ves.* 398. *Millet* v. *Rowse,* 11 *Ves.* 419.)

IV. The case is fortified still farther by the facts, that the consideration actually paid by the appellant for the assignment was neither meritorious nor fair ; but grossly inadequate ; and that in procuring it, a most oppressive advantage was taken of the husband's pecuniary distresses and necessities.

**V.** On the whole, the decree is warranted by the pleadings and proofs in the cause, and is in conformity to the settled law of a Court of Equity, on the subject.

*Henry,* in reply, reviewed the cases cited for the respondent, and remarked, that the whole class of cases which went to deny the husband a right to dispose of the wife's equity, proceeded upon the ground that it could not be reached at law, but only by the aid of this Court. They were English cases, and, therefore, went upon the law as it stood there. It is otherwise in this country as to legacies which, in whatever shape they may be devised, are recoverable by an action at law. The statute (1 *R. L.* 315-16, *s.* 19) which gives this right, has been in existence ever since 1743, (1 *S. & L.* 315 ; *V. S.* 229 ; 2 *J. & V.* 386 ; 1 *K. & R.* 540) and cuts up, at once, all the English doctrine as to the wife's equity in a legacy. It is no longer a mere equitable right. The husband may proceed at law ; and a Court of Equity therefore will not and cannot restrain him, according to the doctrine of all the cases.

SAVAGE, Ch. J. On the 21*st* of *June,* 1814, *Thomas Hewitt,* of the city of *New-York,* being possessed of 310 shares in the capital stock of the *Bank of America,* executed a deed of settlement, by which, among other things, he transferred all his shares in the *Bank of America,* to the president, directors and company of that bank, in trust for the uses and purposes in the deed expressed ; one of which is as follows : " In further trust to pay my daughter *Eliza* the interest or dividends accruing on eight thousand dollars of the said stock or shares, as the same accrues, for her education ; and to transfer the principal thereof to her, at the age of 21 years." " If my said daughter *Eliza* dies under 21, and without issue, then the principal to go to my said son *Thomas.*" It was also further provided, that if the bank should be about to be dissolved, then they should transfer the shares to *Jonathan Burrall, Henry Remson* and *Richard Riker,* to hold upon the same trusts. *Thomas Hewitt* died on the 12*th* of *October,* 1814, leaving the deed of settlement in full force. *Sidney Hewitt,* the mother of *Eliza,* was appointed,

*Margin notes:*

ALBANY, April, 1824.

Udall
v.
Kenney.

Statement of the case.

Deed of settlement.

Guardian and trustee.

ALBANY,
April, 1824.

Udall
v.
Kenney.

Marriage.

by the Court of Chancery, guardian of her person, and *Isaac L. Kip*, Assistant Register, her trustee to receive the dividends and pay them over to *Sidney Hewitt* the guardian. Mrs. *Kenney* supposes she was, therefore, a ward of the Court of Chancery. On the 19*th* of *January*, 18*l*8, *Eliza* intermarried with her present husband, *Edward M. L. Kenney*. She was then a little over 16 years of age, and was at a boarding school, where she had been placed by her mother. *Sidney Hewitt*, the mother and guardian, had been applied to for her consent to the marriage, but she refused it except on condition that it should be postponed for two years. Upon the marriage taking place the guardian was displeased, but became reconciled in about a week.

Order to pay
dividend to
*Kenney.*

On the 9*th* of *February* following, *Kenney* was authorized by a rule of Court, founded on and reciting the marriage, to receive the dividends until the further order of the Court; and, by virtue of this order, he did receive one or more dividends. He became much embarrassed, and proposed to

Pledge of the
stock.

pledge or sell the stock. One *Ezra L. Ingraham* offered his services in effecting some negotiation, with a view to raise money. The appellant, *Udall*, became the purchaser, for the nominal price of $5000, under circumstances which I shall hereafter advert to, and took an assignment, dated the 12*th* of *December*, 1818, executed by *Kenney* and his wife, who was still an infant; and paid, as he alleges, $4500. Mrs. *Kenney* avers that only $150 were applied to her use.

Order to pay.
dividends to
*Udall.*

On the 17*th* of *June*, 1819, an order was granted, founded upon the sale to *Udall*, directing the dividends after the 1*st* of *January*, 1819, to be paid to him until Mrs. *Kenney* should arrive to the age of 21, or the further order of the Court.

Bill.

On the 11*th* of *November*, 1820, she filed her bill, praying: 1. That the assignment to *Udall* might be declared null and void, as respects her individual rights to the stock, and that *Udall* might assign it to some proper person, as trustee for her: 2. That he might account for the dividends received by him: 3. That an order might be made, revoking the order of the 17*th* of *June*, 1819: 4. For such disposition of

the stock as would secure it for her own support and maintenance, and place it beyond the control of her husband.

On the 10th of August, 1821, the Chancellor declared the assignment to be void, as respected Mrs. Kenney's rights ; rescinded the former orders for paying dividends to Kenney and Udall respectively ; directed payment to Mrs. Kenney's solicitor, to the amount of the costs, and then to Mrs. Kenney herself; directed the bank not to permit a transfer of the shares ; and leaving Mrs. Kenney, when 21 years of age, to apply for the stock, or so much as justice shall require, to be settled for her separate use and support. To reverse this decree is the object of the present appeal.

The determination of this cause, independent of the fairness or unfairness of the transaction, must depend upon the extent of the marital rights. The signature of the wife to the assignment gave it no additional validity. She was, on account of her infancy, incapable of doing any act, disposing of her property, or dispensing with her rights ; and, on account of her coverture, she is presumed to have acted under the coercion of her husband. The assignment, therefore, must be considered as the act of the husband alone.

The interest of the husband was acquired by virtue of the marriage.

It is not disputed, that a husband, in virtue of his marriage, becomes absolute owner of the goods and chattels of his wife ; and may, consequently, dispose of them, including not only her choses in possession, but in action, when the latter are reduced into possession. And the authorities go so far as to say, that if the husband can obtain possession of the wife's choses in action, without the aid of a Court of Chancery, he will be permitted to do so ; and then to dispose of them at his discretion. But where the property of the wife is under the care of the Court, and the husband cannot enjoy it without the authority of the Court, care will be taken that before it is placed at the husband's disposal a suitable provision shall be made out of it for the wife's support.

That the general assignees of the husband stand in no better situation than the husband himself, admits of no dispute. But the cases are not perfectly agreed as to the situation of

ALBANY,
April, 1824.

Udall
v.
Kenney.

Decree.

Cause depends on extent of marital rights.

The assignment by the wife, she being an infant, was void.
So, by reason of her coverture.

Husband becomes absolute owner of wife's choses in possession. So of her choses in action, when reduced into possession. And, it seems, if he can obtain possession without the aid of chancery, he cannot be restrained as to the disposition he may make of them. But if otherwise, the court will see that a suitable provision is first made for the wife.

ALBANY,
April, 1824.

Udall
v.
Kenney.

Review of ca-
ses.

*Sir Edward
Turner's case,*
1 *Vern.* 7, *A.
D.* 1681.

*Pitt* v. *Hunt,*
1 *Vern.* 18.

*Tudor* v. *Sa-
myne,* 2 *Vern.*
270, *A. D.*
1692.

*Jacobson* v.
*Williams,* 1 *P.
Wms.* 382, *A.
D.* 1717.

*Bosvil* v.
*Brander,* 1 *P.
Wms.* 458, *A.
D.* 1718.

an assignee of a specific chose in action, or an assignee for valuable consideration. A concise review of the decisions will, therefore, be of service, in arriving at a correct conclusion.

It was determined by the Lords, in Sir *Edward Turner's* case, (1 *Vern.* 7) on appeal from Chancery, that a term assigned in trust for a *feme sole,* might be disposed of by the husband after marriage ; but if it had been assigned for the use of the wife, by consent of the husband, then he could not meddle.

In *Pitt* v. *Hunt,* (1 *Vern.* 18) Chancellor *Nottingham* decreed according to this case, though contrary to all previous adjudications, and so admitted by the counsel.

In *Tudor* v. *Samyne,* (2 *Vern.* 270) the same doctrine was held, upon the authority of *Turner's* case.

In *Jacobson* v. *Williams,* (1 *P. Wms.* 382) before Lord Chancellor *Cowper,* an infant, entitled to a legacy of £1000, intermarried with *J. S.* at 18 years of age, without the knowledge or consent of her father. *J. S.* becoming a bankrupt, the plaintiffs claimed the legacy as assignees. This claim was denied as to the principal sum, upon the ground that they stood in no better situation than the bankrupt himself, to whom the Court would not have allowed it without a provision for the wife and children. For the same reason, it was said, the assignees had a right to the interest during the husband's life. But, at a subsequent day, the Chancellor dismissed the bill, upon the ground that the legacy depending on a contingency which had not ceased when the assignment was executed by the commissioners, therefore nothing passed, not even the interest.

In *Bosvil* v. *Brander,* (1 *P. Wms.* 458) a *feme sole,* mortgagee, married a tradesman who became a bankrupt, and the commissioners assigned all his estate, real and personal. Then the husband died, and his widow filed her bill to have the benefit of the mortgage. But the Master of the Rolls decreed against her, on the ground that, as there was a covenant to pay the money, the legal estate was vested in the assignees. It was said, however, that if the husband or the assignees had asked the aid of Equity to enforce the mort-

gage, the Court would have refused this, unless some provision had been made for the wife.

In *Duke of Chandos* v. *Talbot*, (2 *P. Wms.* 608) before *King*, Ch. the question was, whether a legacy of £1000, given to *Dorothy Doliman*, payable at her age of 25 years, and assigned by her and her husband for £750, before she became of age, was a good assignment ; and it was decided that, being a personal thing, the husband alone might assign it, and as to its being a contingency, that was no objection, for the possibility of a term might be assigned by the husband alone ; and *Theobalds* v. *Duffoy*, (9 *Mod.* 102) was cited.

In *Bates* v. *Dandy*, (2 *Atk.* 207) the husband had borrowed money, and pledged two mortgages, to which his wife had an equitable title, and promised in writing to assign them as security. But dying without having made the assignment, Lord *Hardwicke* held, that the husband's promise to assign amounted, in equity, to an assignment *pro tanto*, the residue belonging to the wife. And it is then declared, that the husband may assign the wife's chose in action, or a possibility that the wife is entitled to, as well as her term, if the assignment be for valuable consideration.

In little more than a year afterwards, came the case of *Jewson* v. *Moulson*, (2 *Atk.* 417) which has been fully stated by his Honor the Chancellor, in his opinion. The husband assigned to the defendant, for an honest debt, the share of his wife in her father's estate, which depended on the contingency of her arriving at 21 years of age. He afterwards assigned the same to trustees, for the benefit of all his creditors. Lord *Hardwicke* said, that the equity was extremely plain against the husband and his general assignees ; that the Court will not suffer the husband to take the wife's portion, till he makes a reasonable provision for her ; and he dates this doctrine as far back as the 14*th* of *Charles* the first. He further remarked, that if the husband could obtain possession of his wife's chattels without the aid of the Court, he knew of no instance in which it had interfered ; but he expressed a doubt whether an injunction would not be grant-

ALBANY,
April, 1824.

Udall
v.
Kenney.

*Duke of Chandos* v. *Talbot*, 2 *P. Wms.* 608, *A. D.* 1731.

*Bates* v. *Dandy*, 2 *Atk.* 207, *A.D.* 1741.

*Jewson* v. *Moulson*, 2 *Atk.* 417, *A. D.* 1742.

ALBANY,
April, 1824.

Udall
v.
Kenney.

ed, at the wife's request, to stay execution till provision be made for her. He then refers to several previous cases, and mentions *Tudor* v. *Samyne*, *Bosvill* v. *Brander*, and *Bates* v. *Dandy*, in which, he observes, the assignee for valuable consideration had got the better of the wife's equity. The circumstances of the case were much relied on, the wife's infancy; that the assignment was not of a particular thing, but her whole fortune; the clause of survivorship; the requisite aid of the Court to obtain possession of her fortune; and the presumed knowledge of *Moulson*, the creditor of all these facts, as well as of the rule in Equity as to making provision for the wife out of her own fortune. He lays great weight upon several facts which were parallel with those in this case—that the wife's whole fortune was assigned—that the husband was in debt before he married—ran away with his wife clandestinely. And he says, if an assignee for valuable consideration is to be protected, all the care and guardianship which the Court extends to infants would be entirely defeated. He, therefore, determined not to allow the whole to the creditor, without making provision for the wife. The parties settled, by dividing the fund, and Lord *Hardwicke* confirmed the agreement.

*When husband comes for wife's equity, he must do equity.*

*And so the wife may ask the aid of the court against her husband.*

In these cases the doctrine is, that when the husband or his assignees come into Equity to obtain possession of the wife's choses in action, the Court will compel them to do equity. It seems, however, that if the wife's fortune is the subject of equitable cognizance, it is immaterial, in this view, who asks the aid of the Court. The same consequences follow, in whatever shape the matter is brought forward.

*Grey* v. *Kentish*, 1 *Atk.* 280, *A. D.* 1749; 1 *P. Wms.* 459, *n. S. C. cited and corrected.*

Accordingly, in *Grey* v. *Kentish*, (1 *Atk.* 280; 1 *P. Wms.* 459, *n. S. C. corrected*) the wife's property was, by a decree of Chancery, vested in *South Sea* annuities. The husband assigned it as security for £150, and became bankrupt. The wife petitioned that the annuities might be transferred to her. Lord *Hardwicke* said, that a husband cannot assign a possibility in law, but Equity will support such an assignment for valuable consideration. This was not an assignment, but a pledge, and as the particular and general as-

asignees took with notice of the equity of the wife, it was decreed to her.

In *Saddington* v. *Kinsman*, (1 *Br. Ch. Cas.* 51-2) Lord *Thurlow* said, that in the case of an assignment for valuable consideration, no provision is made for the wife ; but the cause was never decided. He referred to *Gayer* v. *Wilkinson*, (1 *Br. C. C.* 50, *note*) which denied that a wife's equity passed by a bankrupt assignment, and asked the counsel whether they knew of any case in point which contradicted it ?

In *Worrall* v. *Marlar*, and *Bushnan* v. *Pell*, (1 *P. Wms.* 459, *note*) *Sarah Worrall*, the wife of an insolvent debtor, was entitled, by bond from her father, to a share of his estate. The father, by will, after the insolvency of her husband, gave her £8000, in lieu of her claim by virtue of the bond. She filed her bill, praying that the £8000 might be settled upon her, to her separate use, and the use of her children. *Bushnan*, her husband's assignee, filed his bill, praying for an account under the bond, and to elect as the husband might if he had not become insolvent. Lord *Thurlow* was clearly of opinion, that the interest of the wife was assignable, but that the claim of the creditors extended only to the interest taken under the bond ; and as to that under the will, the assignee should make proposals for a settlement on the wife and children. His Lordship added, that he had considered the several cases on the subject, and did not find it any where decided, that if the husband make an actual assignment, by contract, for a valuable consideration, the assignee should be bound to make any provision for the wife out of the property assigned ; but that a Court of Equity has much greater consideration for an assignment actually made by contract, than for an assignment by mere operation of law. In the latter case, the creditor stood in the place of the husband, as respects the wife's equity. After proposals had been made, one half the amount due on the bond was decreed to the creditors, and the residue of the £8000 to the wife.

It will be seen, that the decision of this case did not require the observations of Lord *Thurlow*, relative to assignees

ALBANY,
April, 1824.

Udall
v.
Kenney.

*Saddington* v.
*Kinsman*, 1 *Br.
Ch. Cas.* 51-2,
*A. D.* 1779.

*Worrall* v,
*Marlar*, and
*Bushnan* v.
*Pell*, 1 *P.
Wms.* 459, *n*₂
*A. D.* 1784.

ALBANY,
April, 1824.

Udall
v.
Kenney.

for valuable consideration.   What he said on that subject was, therefore, altogether *obiter.*   At all events, he was mis-taken in supposing that there were no cases establishing the wife's equity, as against assignees for valuable consideration. There is a short note of this case in 2 *Dick.* 647, under title of *Worsal* v. *Marlar.*

*Many cases de-claring wife's equity, as a-gainst her hus-band, cited by respondent's counsel, supra.*

The doctrine of the wife's equity will be found distinctly declared, as against the husband, in a great number of cases, cited by the counsel for the respondent; but it cannot be necessary even to name them here.  The cases already com-mented on, leave no doubt as to the doctrine and practice of the Court to sustain the wife's equity against her husband, his assignees by operation of law, and his voluntary assign-ees.  And the only question in the case is as to an assignee for valuable consideration.

*Gayner v. Wil-kinson, 2 Dick. 491,   A. D. 1783.*

In *Gayner* v. *Wilkinson,* (2 *Dick.* 491) the plaintiffs, as assignees of the husband, claimed a contingent legacy given to the wife but not reduced into possession in the life of the husband.  Lord *Bathurst* remarked, that there is a difference between an assignee for a consideration, and the assignees of a bankrupt, because a general assignee must sue in his own name, but a particular assignee must sue in the name of the husband.  He adds, that if the husband dies before the sub-ject of the assignment is recovered, the assignee will lose all legal remedy, and must come into Chancery for its assistance ; that particular assignments have been sometimes supported, but not generally ; that the Court will not strip a widow and children ; that the interest of the wife was not such a legal interest as the husband could assign ; and he dismissed the bill.   He cited *Wenman* v. *Mason,* where the wife had joined her husband in the assignment, and yet she was al-lowed a settlement of £300.

*Pope v. Cra-shaw,   4  Br. Ch. Cas. 326, A. D. 1793.*

In *Pope* v. *Crashaw,* (4 *Br. C. C.* 326) the Master of the Rolls said, he hoped it would be understood, that a husband cannot by assigning his wife's property bar her of any equity she may have in it.   That he should never subscribe to the contrary doctrine.

*Burdon   v. Dean,  2 Ves. Jun.  607,  A. D. 1795.*

In *Burdon* v. *Dean,* (2 *Ves. Jun.* 607) the right of the wife to her equity was distinctly admitted and allowed.

The case of *Like* v. *Beresford*, (3 *Ves.* 506) was much stronger than the present in favour of the assignee for valuable consideration. The wife was entitled to a legacy, in bank stock, on the day of her marriage. She eloped with *Beresford*, in *October*, 1780, and about the same time a bill was filed in her name, against the trustee, and the stock was transferred to the name of the Accountant General. The real object of the bill was, to make the wife a ward of the Court of Chancery. *Beresford* filed his bill to obtain the stock ; and during the pendency of the suit borrowed money of one *Roberts*, and conveyed the stock to him in trust to sell and pay himself, and to pay over the residue to *Beresford*. *Beresford* also became indebted to *Like*, the plaintiff, for money and necessaries furnished to him and his wife; in consideration of which, and of moneys to be advanced by *Like*, *Beresford*, by deed of assignment of *March*, 1783, conveyed the stock to *Like*, subject to *Roberts'* claim. The whole, being upwards of £5000, was decreed to trustees, for Mrs. *Beresford* ; and the object of *Like's* bill was, to obtain payment of his demand out of the dividends accrued subsequent to the marriage. It was insisted, for the plaintiff, that whatever is the rule as to the husband's right to assign his wife's fortune for valuable consideration, at least, he should be allowed the dividends accrued, and that he might, for valuable consideration, assign an equitable estate in the wife's property. But the Master of the Rolls decreed against the plaintiff, relying on the declaration of Lord *Hardwicke*, in *Jewson* v. *Moulson*, that the right of the husband to assign would put an end to the equity of the wife. Much weight was placed on the fact that the wife was a ward of the Court.

In *Macauley* v. *Philips*, (4 *Ves.* 19) speaking of the decision in *Like* v. *Beresford*, the Master of the Rolls says, the guard of a Court of Equity upon the wife's interest would be very singular, if the husband, not being entitled at law, might assign it for valuable consideration to another person, who would be entitled in Equity; and it never was decided, that the husband could by such assignment or any other means deprive her of her equity.

ALBANY,
April, 1824.

Udall
v.
Kenney.

*Like* v. *Beresford*, 3 *Ves.* 506, *A. D.* 1797.

*Macaulay* v. *Philips*, 4 *Ves.* 19, *A. D.* 1798.

ALBANY,
April, 1824.

Udall
v.
Kenney.

I will notice but one other case on this point. In John-son v. Johnson, (1 Jac. & Walk. Rep. 456) the doctrine of the two last cases is adhered to. The Master of the Rolls admits, that an assignment for a valuable consideration is sufficient to bar the right of the wife, surviving ; but that it does not, however, take away her equity. All this, he adds, is too clear to admit of any doubt. ·

Wife's equity cannot be taken from her, except by her consent in open court, or by a suitable provision. for her.
Rule is the same as to husband and his assignee, general or special, in law or in fact, voluntary or for a valuable consideration.
11 Ves 12. 4 id. 515. 1 Des. 263. 2 John. Ch. Rep. 206.

It appears, therefore, to be established beyond all dispute, that the personal property of a feme covert which is under the protection and control of the Court of Chancery, cannot be taken from her without her consent in open Court, or by a suitable provision being made for her out of the property. And it matters not whether the application for the property be made by the husband, or his assignee in law, or his assignee for a valuable consideration. Whether the Court will extend its aid to property which the husband or his assignee can reduce to possession at law, is not absolutely decided ; nor does that question arise here.

To the cases already mentioned may be added, Wright v. Morley, (11 Ves. 12) and Franco v. Franco, (4 Ves. 515) in England ; and, in this country, Ex parte Beresford, (1 Des. 263) and Howard v. Moffatt, (2 John. Ch. Rep. 206.) And, on the whole, I fully concur with his Honor the late Chancellor, when he says, " I consider the wife's equity, as against any assignment whatsoever and to whomsoever, to be now too well settled to be shaken.".

The extent of provision for the wife is a subject of reference to a master, and must, from its nature, depend on the circumstances.

As to the amount of the wife's estate which shall be secured to her, that is a proper subject of reference to a Master, and must necessarily be determined by the circumstances of each particular case. The rule is, that an adequate provision be made for the wife, and the children if there are any. What shall be considered adequate must depend entirely on circumstances. In some cases the whole has been allowed the wife—in one case an annuity of £40 per annum—in another the interest of £8000. In other cases, the half has been assigned, by agreement, and sanctioned by the Court ; and, again, £100, out of an annuity of £260, was decreed to the assignee of the husband. This part of the subject is

ALBANY,
April, 1824.

Udall
v
Kenney.

here in no wise important, except so far as relates to that part of the decree of his Honor the Chancellor which rescinds the previous orders of the Court, allowing the dividends of the stock in question to be paid first to *Kenney* and afterwards to *Udall*, and di.ects those accruing subsequent to filing the bill to be paid to Mrs. *Kenney* herself, after payment of the costs, till the further order of the Court.

The general rule undoubtedly is, that the interest of the wife's property may be received by the husband, where he lives with and maintains her. but not when he leaves her unprovided. (*Watkyns* v. *Watkyns*, 2 *Atk.* 96. *Sleech* v. *Thorington*, 2 *Ves. Sen.* 562. *Wright* v. *Morley*, 11 *Ves.* 12.)

*Interest to be paid husband who lives with and maintains wife; and the exceptions to this rule.*

In *Bond* v. *Simmons*, (3 *Atk.* 20) Lord *Hardwicke* said, that when a husband has received a great part of his wife's portion, and only a small part remains, and the husband is so perverse that he will not make a competent settlement on the wife, the Court will not only stop the payment of the residue, but will even prevent his receiving the interest of that residue, that it may accumulate for the benefit of the wife, unless he is starving for want of maintenance. And in *Bullock* v. *Menzies*, (4 *Ves.* 799) the Court refused to give the wife any part of the interest of her own property, because she refused to live with her husband, when he was willing to receive and provide for her.

*3 Atk. 20.*

*4 Ves. 799.*

In some cases a reference has been directed, to ascertain the fact of the husband's providing for his wife. If that fact be material in this case, it is pretty clear, from the pleadings and proofs, that the husband has totally neglected his duty in this respect. So far from providing for his wife, it appears to have been his object to squander the whole of her patrimony as fast as possible. He, therefore, does not come recommended to the favor of the Court, and in justice to the wife, it ought to direct the payment of the dividends either to her or to some trustee for her benefit.

But the question here is not between the husband and wife. The appellant claims to be a *bona fide* purchaser, by contract, for valuable consideration. Admit, for the present, that he is so. What did he purchase? Clearly, nothing but the right to be substituted for the husband, as to his inte-

*Question here is not between husband and wife, but between her and one who claims to be a bona fide purchaser.*

ALBANY,
April, 1824.

Udall
v.
Kenney.

He can, as such, claim no greater rights than the husband, but stands in husband's place, taking subject to wife's equity.

And that he is a *bona fide* purchaser is questionable.

It seems, inadequacy of price, alone, is not a ground for setting contract aside.

Advantage was taken of husband's pecuniary distresses.

Purchaser had notice of wife's claim;

rest in the wife's property. In *Wright* v. *Morley*, Sir *Will-iam Grant*, reasoning on the subject, asks, "If the husband has but the right of reducing the wife's interest into possess-ion, how can he, for valuable consideration or otherwise, convey more than he has ? If he parts with it for valuable consideration, and the assignee acquires a right different from that which the husband had, he parts with something different from what he has ;" and he might have said *more than he has.* And in this instance, if the claim of the appellant be allowed on account of his character of *bona fide* purchaser for valua-ble consideration from the husband, by that very purchase he has, in connexion with the husband, stripped this infant wife, probably, of her whole fortune, and reduced her to beggary— from competence, if not affluence, to absolute penury. But he has chosen to put himself in the situation of the husband. The Court will leave him there.

That the appellant is a *bona fide* purchaser for valuable consideration, is at least questionable. It is not necessary to impute to him absolute fraud ; but the facts in the case shew that an unconscientious advantage was taken of *Ken-ney's* situation. The stock was offered to him at a bargain ; and had he contracted with persons on an equal footing with himself, notwithstanding the enormous speculation, the inadequacy alone would not induce the interference of the Court. (*a*) Nor is it necessary now to interfere solely on that ground. But it is certainly true, from his own shew-ing, that he took at least $2000, from these poor, distress-ed, and improvident people ; making due allowance for every risk he run, with the exception of the claim of the wife's equity. By advancing money before the terms were absolutely settled between him and *Kenney*, he placed him in a situation which compelled him afterwards to submit to such conditions as might be imposed. The appellant entered in-to the purchase after an examination of the deed of settle-ment. He acted against the advice of counsel, and, as must be presumed, whatever may be the fact, with a full knowledge of the wife's rights. His subsequent purchase of his own

(*a*) Vid. *Seymour* v. *Delancy, ante,* 445.

bond, for half the amount secured by it, as the Chancellor justly observes, marks the character of the whole transaction.

The appellant has, however, actually parted with his money, to a certain amount, and justice requires that it should be refunded to him by the husband ; and this may be done out of the wife's property, provided there is sufficient, after making an adequate settlement upon the wife. To discuss this subject farther might be premature. I have no hesitancy, however, in saying, that if the stock in question is her whole fortune, it is not too much for her support ; and it should be settled upon her, for the support of herself and children, if any.

The result of my researches and reflection on this case is—

1. That the wife has an undoubted right to an adequate provision for her, and her children, if any, out of her equitable property, as against her husband, or any assignee of the husband. And when it is necessary to come into a Court of Equity, for its aid in obtaining possession of such property, the Court will see that proper provision shall be made.

2. That though, in general, a husband who lives with and maintains his wife is entitled to receive the dividends or interest of her estate, yet when the husband deserts his wife, or neglects or refuses to provide for and maintain her, or when he has misbehaved himself, and ran away with a ward of the Court, and, I would add, when he has shown a total incapacity to manage his concerns, or a disposition wantonly to waste his wife's property, in such cases the Court ought to direct the interest to be paid, either to the wife, or to a trustee for her benefit.

I am, therefore, of opinion, that the decree of his honour the late Chancellor be affirmed, except so far as it rescinds the former orders of the Court of Chancery, directing the dividends to be paid first to *Kenney*, and afterwards to *Udall*, and that part directing the dividends which accrued before the decree to be paid to Mrs. *Kenney*. By the order of the 9th *February*, 1818, the dividends were directed to be paid to *Kenney* till the further order of the Court; and by the

*Margin notes:*

ALBANY, April, 1824.

Udall v. Kenney.

But he is entitled to what may remain after provision for wife.

Wife has right to provision out of her equitable property, against husband or any of his assignees.

Though husband who lives with and maintains his wife is entitled to the interest of such property, yet if he neglect to do this, or has ran away with and married a ward of the court, or has shewn incapacity to manage his concerns, or a disposition to waste his wife's property, court should direct the interest to be paid to her, or to some trustee for her benefit.

ALBANY,
April, 1824.

Udall
v.
Kenney.

order of *June 7th*, 1819, the dividends which accrued after the *1st January*, 1819, until Mrs. *Kenney* should arrive at the age of 21 years, or till the further order of the Court in the premises, were to be paid over to *Udall*. It seems to me just, therefore, that the appellant should have received the dividends until the 10*th* day of *August*, 1821, when the decree was made.

Question as to amount of provision, depending on circumstances, to be referred to a master.

The amount which will be an adequate settlement for the wife must, of course, be ascertained by a Master of the Court of Chancery. The amount actually paid by the appellant ought also to be ascertained by a Master. And on the coming in of his report, should there be any thing left after making a competent provision for the wife, it is perfectly equitable and proper that the surplus be applied to the reimbursement of the amount actually advanced by the appellant.

Overplus to be paid appellant.

For affirmance, 24—for reversal, 3.

WOODWORTH, J. and BOWNE, BRONSON, BURROWS, BURT, CLARK, CRAMER, DUDLEY, EARLL, GARDINER, GREEN, HAIGHT, LYNDE, MALLORY, M'INTYRE, MORGAN, NELSON, REDFIELD, SUDAM, THORN, WARD, WHEELER and WRIGHT, Senators, concurred.

BOWMAN, M'CALL and WOOSTER, Senators, dissented.

Decree.

A majority of the Court concurring in the opinion of SAVAGE, Ch. J. it was thereupon ORDERED, ADJUDGED and DECREED, that the assignment of the bank stock and dividends in the pleadings mentioned, made by *Edward M. L. Kenney*, the husband of the respondent, *Eliza S. Kenney*, to the appellant, *Richard Udall*, on the 12*th* day of *December*, 1818, was and is subject to the equity of the respondent, *Eliza S. Kenney*, to an adequate settlement and provision therefrom ; and that the right and equity of the said respondent to such settlement and provision, out of the said bank stock, remain wholly unimpaired ; and that the decree of the Court of Chancery made in this cause on the 10*th* day of *August*, 1821, so far as the same declares such equity of the said respondent, be, and the same is hereby *affirmed*. But inasmuch as it appears to this Court, that the appellant, *Richard Udall*, was entitled, under the orders of the Court of Chan-

rery referred to in the pleadings, and directing the dividends of the said stock to be paid to the said *Edward M. L. Kenney*, and afterwards to the said appellant himself, to receive the said dividends until the date of the said decree so made in this cause by the said Court of Chancery—it is ORDERED, ADJUDGED and DECREED, that so much and such part of said decree as rescinds the said orders, and directs the dividends on the said stock which were received since the said 11*th* day of *November*, 1820, and prior to the making of the said decree, to be paid to the solicitor for the said respondent, be, and the same is hereby *reversed ;* and that the same be paid to the appellant. And it is further ORDERED, ADJUDGED and DECREED, that the record in this cause be remitted to the Court of Chancery ; and that it be referred to one of the Masters of that Court, to ascertain and report as to the fortune and estate of the respondent, *Eliza S. Kenney*, derived from her father, *Thomas Hewitt*, or otherwise, and the disposition thereof ; and, generally, as to the property, estate, condition and circumstances of the said *Eliza S. Kenney* and her husband, *Edward M. L. Kenney*, at the time of their marriage, and also at the time of making such report ; to the end that such competent and adequate settlement and provision may be made, for the separate use and maintenance of the said respondent, and her children, if any she has, or may have, out of the aforesaid bank stock, and the dividends which accrued thereon after the said decree, as may be just, regard being had to all the circumstances of the case, as the same shall appear on the coming in of such report ; and that the surplus, if any, be decreed to the appellant, &c.