Judge Lane
delivered the opinion of the court:
The precise ground upon which relief is claimed in the present- *430 case is not very specifically pointed out in the bill. It is hardly insisted that the duress is such as to avoid the contract. Although the'agreement to convey was executed while the plaintiff was in prison, yef it was a lawful imprisonment, and not produced by Lindsay, and a bond to procure a discharge, or for any other honest purpose, is not void. 2 Inst. 481. It was not unreason.able for Lindsay to annex to his offer of bail the condition that ICnobb should secure him against the risk. And it seems that this ground *of relief is wholly taken away by the execution of the stipulated conveyance, after his discharge from prison, when .all restrictions upon his liberty were at an end.
Is it sufficiently proved that he was incapable of contracting ? He is represented to be at times-intemperate. Burdieh says that while under arrest and on his way to prison he seemed depressed, cast down, and intoxicated, so much that he should not have deemed it right to have made a contract with him. Picklehamer alone represents him as having lost his senses after his liberation, “sometimes crying,'sometimes preaching, sometimes cursing and swearing, during which he appeared sober.” To explain this we need not raise the harsh presumption that he was following the advice he said he had received, “to act foolish that he might regain his land.” The testimony fully shows that none of his acquaintance ascribe to him any other insanity than occasional intoxication.
There is no sufficient evidence that fraud was practiced upon the plaintiff. The arrest did not arise from the defendant, nor did he officiously pi’ess his aid upon the plaintiff; he lent his assistance at the solicitation of the plaintiff at an accidental meeting.
No false pretenses are shown as inducements to lead the plaintiff into this agreement. But it is said that he intended not to ■ convoy the land, but to mortgage it for Lindsay’s-indemnity. The proof to support this is of the slenderest description, consisting merely of the fact that while in jail, and before the agreement was made, Lindsay and Knobb told Mr. Fox that Lindsay had agreed to become the bail, and to take a mortgage on the land for indemnity. May it not be presumed that the parties changed their arrangements ? The answer alleges that he designed to disinherit his family, and his situation renders this in the highest degree probable. That the agreement was not truly written is fully denied in the answer, and fully disproved by testimony. The bill *431 shows that on the day when the land was conveyed by Knobb, Lindsay gave to him a bond for the annuity, the payment of which was secured by a mortgage of the same land to Knobb by Lindsay. Can it be possible -that this arrangement should have been made ^unless the land had been conveyed; that Knobb should have taken a deed from Lindsay unless he had transferred to him? What other consideration did Lindsay receive for the annuity? But the direct proof is full. Dennis, a subscribing witness, knows the deed was read and explained to Knobb, and he appeared satisfied. Foster, likewise present, says -that on learning its terms he hesitated to sign the deed, but afterward consented. He told Eickleberger he had sold the land for the annuity ; and Peter Knobb proves that before his father went to Pennsylvania he spoke of the sale to Lindsay, that possession was yielded, and the outstanding leases were destroyed by- his consent..
There remains the question upon the inadequacy of consideration only. An estate worth two thousand or two thousand five hundred dollars, and producing eighty dollars per annum, although in bad repair, is sold for the annuity of one hundred dollars for the life of an intemperate man, who has passed the age of •sixty. Efforts are made to show the difference of value is not so strikingly great; that a shade hang's over its title from the claim of Taylor; that a part of the value has been added since the contract by the general rise of property, yet we can not hesitate to believe, from the proof, that Lindsay acquired it for much less than its worth.
But this fact affords the plaintiff no ground for relief. It is a point well settled that mere inadequacy of price, although it may lead courts to abstain from executing agreements, is not a suficient cause for rescinding, unless it be so gross as to afford proof of actual fraud. 2 Johns. Ch. 1; 14 Johns. 527; 3 Cow. 590; 3 Cow. 445; 2 Des. 636; 3 Des. 292; 4 Des. 651.
That degree of inadequacy does not exist in the present case. The parties were dealing upon a most obscure subject of traffic, the value of the life of an intemperate old man. Some of the witnesses, who seem honest, calculated its probable duration at twenty or thirty years. If witnesses entertain such extravagant opinions the parties may be excused in mistaking without the imputation of fraud. Besides, we may as well presume that *432 Knobb would then have preferred to bestow the benefit of his-property upon the friend who delivered him from prison rather than upon *the son who placed him there. The facts do not authorize the conclusion of actual fraud. If the contract had remained executory, perhaps we might not have decreed a performance, but there is no ground toxescind.
Bill dismissed.-