## SUPREME COURT.

### SLEIGHT agt. READ AND OTHERS.

On a foreclosure, the surplus moneys brought into court are subject to its jurisdiction as a court of equity.

A judgment creditor of the *husband*, where the wife claims as heir, has no lien upon the surplus, even where the marriage took place and the debt was incurred prior to the laws of 1848 and 1849, establishing the rights of married women.

*It seems* that the law of 1848 applies to after-acquired property.

*New-York Special Term, April,* 1854. Rights of married women.

Catharine Bishop, one of the defendants, claimed to be paid to her out of the surplus moneys in this action, one equal third part of the whole amount, subject only to the dower of Eunice Read, the widow of Cornelius Read, the mortgagor. That such claim was made as one of .the three children and only heirs-at-law of the said Cornelius Read.

Mary Elizabeth Alexander, also one of the children and heirs-at-law of said Cornelius Read, made a like claim.

On the 6th January, 1854, a referee was appointed to ascertain the lien of John B. Vail and any other liens, and their priorities, upon the surplus funds brought into court in this action.

On the 15th February, 1854, the referee made his report, by which he found that Cornelius Read, the mortgagor, died intestate and seized in fee simple of the mortgaged premises, on the 30th April, 1849, leaving him surviving his widow, the defendant Eunice Read, and three children, namely: his two daughters, the defendants, Catharine, wife of the defendant Joseph Bishop, and Mary Elizabeth, wife of the defendant John

Alexander, and a son, John Read, and no other heirs or next of kin. The children were all of full age at the death of their father that the marriages of the daughters were prior to 1847 : that Bisnop and his wife had issue living : that Alexander and his wife never had any issue : that John B. Vail recovered judgment in this court against said Alexander, which was docketed on the 17th November, 1848, for the sum of $549,37 ; and that said Vail recovered judgment in the superior court against said Bishop, which was docketed on the 16th April, 1849, for the sum of $380,79—both of which judgments were a lien upon the said surplus moneys : that the judgment against Alexander was rendered for a debt contracted in the month of January, 1848, and that the judgment against Bishop was rendered for a debt contracted prior to the month of November, 1847 : that the last-mentioned judgment was to the extent of $200 collateral to the first-mentioned judgment: that said John B. Vail sold and assigned the said two judgments to Henry Whinfield, on the 9th January, 1850, who was then the owner of them, and that both the said judgments are wholly unsatisfied.

That Catharine, the wife of Joseph Bishop, and Mary E., the wife of John Alexander, were each entitled to the sum of $611,01, subject in Mrs. Bishop's share to the tenancy by the courtesy of her husband—and subject, in Mrs. Alexander's share, to the life estate of her husband, during the joint lives of herself and her said husband.

That said Henry Whinfield, by virtue of the aforesaid judgment against Joseph Bishop, was entitled to the income of the said share of Catharine Bishop during the life of the said Joseph Bishop ; and that, by virtue of the judgment against John Alexander, said Whinfield was entitled to the income of the said share of Mary E. Alexander during the joint lives of herself and husband, until, by the application of the annual income of the said respective shares toward and upon the said judgments, with the interest thereon from their dates respectively, less the sum of $200 and interest from the judgment against said Bishop, they were paid in full.

The report also disposed of the share of the widow, Eunice Read, and of the son, John Read.

Exceptions to the report were taken on behalf of said Catharine Bishop and Mary E. Alexander.

BELL & COE, *Counsel for Mrs. Bishop and Alexander.*

J. D. & T. D. SHERWOOD, *Counsel for creditor, Whinfield.*

ROOSEVELT, Justice.   Is the judgment creditor of the husband, since the acts of 1848 and 1849, entitled to take the whole of the income of the wife's property, leaving the wife, for the proposition goes that length, to starve?

The marriages in this case, it is admitted, had taken place, and the debts been incurred, before the acts for the better protection of the rights of married women were passed. Both sets of engagements were contracts, both were then subsisting, and both had been entered into upon the faith of previous laws.   As to both, therefore, it was beyond the constitutional power of the legislature, had it been so intended, " to impair their obligation."

What then, for that is the point to be solved, were the previous rights of creditors of husbands against the real estate of their wives?

In Namceizaitz agt. Gahn (3 *Paige*, 614) it was held that the wife's equity, as it is termed, was paramount to the claims of the judgment creditor.   And in Udell agt. Kenney, (3 *Cow.* 590; 5 *Johns. Ch. R.* 464,) the court held, also, that it could not be disposed of by the husband without making a suitable provision for her support, to be determined by a reference, according to the circumstances of each particular case.

Besides, during the wife's life, the husband's title—and his creditor's title can be no better—was not absolute.   It might be suspended at any moment, and even destroyed, by his misconduct.   (4 *John. Ch. R.* 318; 4 *Haywood*, 19, 24; 2 *M'Cord*, 368; 5 *Monroe*, 340; 1 *Paige*, 620.)

On a foreclosure, the surplus moneys brought into court are subject to its jurisdiction as a court of equity, which, in such cases, never allows the fund to be taken out without a suitable

provision for the wife and her children. And as the sums in this case are small and not more than sufficient, the whole, independently of the act of 1848, must be adjudged to the wives.

I might here add, however, that if there were any doubts of the rights of the married women in this case, antecedently to the act of 1848, that act would remove them. Its validity in respect of after-acquired property can not be .denied. The competency of the legislature to enact that property, thereafter devised or descended to married women, should be their own, exclusive of their husbands, stands upon precisely the same footing as their power, even against the presumptive rights of heirs apparent already born, to alter the law of descents and testaments. The law of primogeniture at one time prevailed even in this republican country. At the time of its repeal and of the substitution of the present rule, did any one contend that it was necessary to save the rights, or rather I should say the pretensions, of then existing eldest sons? And are the mere expectations of creditors, as to property which may thereafter by possibility descend to their debtors' wives, of any more sacred character? When the constitution of the United States declared that no state should thereafter pass any law impairing the obligation of contracts, its object was to secure, not such airy possibilities, but substantial, well-defined rights, resting on specific contract, on legal obligation. Now, property which, when the act of 1848 went into operation, the wife did not then own, was clearly not subject to her husband's then debts. And yet all her property, " except only so far as the same might be *so liable,*" was, by the second section, declared for the future to be her sole and separate estate. The property in the present case at that time was not hers, but her father's. It was liable, not for her *husband's,* but for her *father's,* debts. It did not become hers, nor had she any right in law, either contingent or vested, till her father's death, which did not happen till 1849. *Nemo est hæres viventis*—a living man has no heirs—is a maxim which, in the sense just indicated, is as old as the law. Her father had a right to give his property to whom he pleased, and

Butler agt. Wentworth.

the legislature had a right, in the event of his not doing so, to say that it should pass absolutely and unencumbered to his married daughters, free from any control or disposal of their husbands. No wrong, in either case, was done to the husbands or the husbands' creditors. They might be disappointed, no uncommon occurrence in this life, but a mere disappointment is not a breach of either law or constitution.

Decree accordingly, against the judgment creditor.

NOTE.—The foregoing decision was affirmed at the general term held in June, 1854. The decision in the case of Rusher and wife agt. Morris and wife, *ante*, p. 266, was also affirmed at the same time.