ISABELLA B. NOE, APPELLANT, *v.* WILLIAM F. NOE, RESPONDENT.

*Abandonment of husband by wife — right of wife to compel a provision for her maintenance.*

In this action, brought by the plaintiff against her husband, she alleged that shortly after her marriage she had conveyed to him the greater part of all her property, both real and personal; that the defendant had taken possession of the same and spent large sums in gambling and riotous living; that the plaintiff was now living apart from her husband with her mother and had no means of support, and she prayed that a portion of the real estate held by her husband might be conveyed to her for her support and maintenance.

Upon an application for an injunction restraining the defendant from collecting the rents of the real estate or selling or disposing of the same, *pendente lite*, *held*, that, as the wife had voluntarily separated from her husband and did not charge him with adultery or any act of cruelty or desertion which would entitle her to a limited divorce, the motion was properly denied.

APPEAL from an order of the Special Term vacating a temporary injunction and refusing an injunction, *pendente lite*, to enjoin the defendant from selling, conveying, and collecting the rents of certain real estate described in the complaint.

The complaint alleged that in August, 1873, the plaintiff and defendant were married; that in April, 1874, the plaintiff came into possession of her father's estate, and in August of that year conveyed the larger part of it to her husband; that he had wasted large sums in gambling and riotous living; that plaintiff had left her husband and was residing with her mother and had no means of support whatsoever, all her estate having been sold or mortgaged by defendant as well as her personal property. She prayed that certain of the real estate held by the husband might be conveyed to her for her support and maintenance.

After the commencement of the action an application was made to have the defendant enjoined from collecting the rents of the property described in the complaint, or from selling or disposing of the same.

The defendant claimed that the plaintiff had left him without any just cause; that he was and always had been ready to support and maintain her if she would return and live with him, and denied that he had wasted large sums in gambling and riotous living.

*C. W. Sandford*, for the appellant.

*Townsend & Weed*, for the respondent.

DAVIS, P. J.:

Equity abhors the separation of husbands and wives without necessity or adequate cause, and the consequent breaking up of families, and in this it accords with the teachings of religion, the dictates of sound morality and the best interests of society. Where the separation of a wife from her husband is voluntary on her part and is caused by no infidelity, or cruelty or ill-treatment on his part, equity will afford her no aid whatever in accomplishing a purpose which is deemed subversive of the true policy of the matrimonial law. So interested, indeed, are courts of equity to promote the reconciliation of married parties living separately that they will, on no occasion whatever, enforce articles of separation by decreeing a continuance of the separation. (Story's Equity, vol. 2, §§ 1426–27, and cases there cited.)

In *Bullock* v. *Menzies* (4 Vesey, 798) the court refused to give the wife any part of the interest of her own property, because she refused to live with her husband when he was willing to receive and provide for her, and had given her no just cause for separation.

In her complaint in this action the wife does not charge her husband with any act of infidelity to the marriage vow, nor with any act of cruelty, or desertion which would entitle her to a separation or limited divorce under the laws of this State. On the contrary, the affidavits tend strongly to show that she has abandoned her husband without having any sufficient or reasonable cause, and is now seeking to reach his property for the purpose of enabling her to live separately and independently of him. It is true that the property that she seeks to reach was derived from her; but there is no allegation that she was induced to convey the same by reason of any fraud, undue influence, or improper persuasion on his part, or on the part of any one on his behalf. It was the voluntary and generous gift of her own affection, made in such form as to carry to him a complete and perfect title. It can no longer be said to be her property, but must, under the circumstances disclosed in the affidavits, be treated as his.

" This court," said the chancellor in *Fry* v. *Fry* (7 Paige, 461),

NOE v. NOE.

" does not encourage a breach of duty on the part of the wife by affording her a maintenance out of the property which belongs to the husband at law by virtue of his marital rights, although it came to her by descent or gift from her own relatives, while she continues to reside apart from her husband against his consent, and without any justifiable cause."

No ground for interference with the defendant's property, because of his improvidence or extravagance is shown, within the rule laid down by the chancellor in *Van Duzer* v. *Van Duzer* (6 Paige, 366). This rule is not to be confounded, however, with that which the court applies in cases where the husband is seeking the aid of a court of equity for the purpose of reducing the wife's property to possession, or any other relief to which he was formerly entitled at law in reference to her estate. (*Howard* v. *Moffatt*, 2 Johns. Ch., 206 ; *Van Epps* v. *Van Deusen*, 4 Paige, 64 ; 3 Story's Eq., 641, 1414 ; *Udell* v. *Kenney*, 3 Cow., 590 ; 8 Kent's Com. [2d ed.], 139.)

It seems quite apparent that when Mrs. Noe left her husband in Paris, for the purpose of a temporary visit to her friends in this country, she had no idea of separating herself from him. The letter that she wrote immediately on her arrival home, indicates not only warm affection for him at that time, but an intention speedily to return to him. The change in her sentiments and purposes, which took place in the few weeks that elapsed between her arrival in this country and his return, cannot be attributed to any act of his during that interval. Her refusal to see him or to permit him to see her on his arrival, was unexplained and unreasonable. But it is not difficult to see in the papers before us, that it was produced by hostile and injurious influences. In a note which the plaintiff wrote to defendant's father she says, " I have nothing to do with any of my property, as I have given all into my mother's hands, and it is not satisfactory to her, for she wants all statements and papers in her own hands." This sentence furnishes a key that seems to unlock the mystery of the trouble between this husband and wife ; and it certainly does not disclose a state of things which calls either for the sanction or aid of the court.

The order of the court below should be affirmed.

Ingalls, J., concurred ; Brady, J., not sitting.

Order affirmed.