Harrison v. Boyd.

---

# HARRISON vs. BOYD.

[ACTION BY WIDOW, AGAINST HUSBAND'S ADMINISTRATOR, TO RECOVER RENTS OF DWELLING-HOUSE.]

1. *Presumption in favor of judgment.*—Where the rulings and judgment of the circuit court can be sustained under the provisions of the Code, but not under the former law, the appellate court will presume, unless the record repels such presumption, that the facts of the case brought it within the provisions of the Code.

2. *When the widow is entitled to dower.*—Under the Code, (§ 1354,) the widow is not entitled to dower in lands which were purchased by her husband at an administrator's sale, but of which he never received any conveyance, not having made full payment of the purchase-money at the time of his death.

3. *When widow is entitled to rents of dwelling-house.*—The widow's

statutory right to retain the possession of the dwelling-house in which her husband most usually resided next before his death, with the adjacent plantation, (Code, §§ 1359, 1354, 1367,) and her consequent right to recover the rents thereof, attach only to the premises of which she is dowable.

4. *What law governs right of dower.*—Authorities cited on the question, whether the widow's right of dower is governed by the law which was of force at the time of the husband's death, or by that which was in existence at the time of the marriage and acquisition of the land.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. E. W. PETTUS.

THIS action was brought by Mrs. Lucy A. Harrison, widow of Reuben Harrison, deceased, against William E. Boyd, the administrator of said Reuben Harrison, " to recover the sum of $2,000, for the rent of the plantation on which the said Reuben Harrison most usually resided next before his death, from the 29th May, 1854, when said Reuben departed this life, up to the 16th January, 1857, the day on which plaintiff's dower in said plantation was set apart." The defendant pleaded, "in short by consent—1st, *non assumpsit;* 2d, that plaintiff has had possession of said house and plantation since the death of her husband, and that defendant cultivated said plantation during the time he occupied the same, at her request and urgent solicitation, and for her benefit; 3d, that plaintiff has received the value of the rents of said plantation, before the bringing of this suit, in the negroes to which she is entitled as a distributee of the estate, ; and, 4th, that defendant had possession of said land as administrator of the estate of said Reuben Harrison, and cultivated the same for the benefit of plaintiff and the heirs of said Harrison, who were tenants in common thereof, and has fully paid over and accounted, as such administrator, to the plaintiff and the heirs of said Harrison, for the rents received and profits of said plantation." Across the face of the third plea, as copied in the transcript, are written the words, " demurrer sustained ;" but the record nowhere else mentions any demurrer.

Harrison v. Boyd.

The facts of the case, as stated in the bill of exceptions, are these: The lands in controversy belonged to one Richard B. Harrison at the time of his death, and were sold by his administrator, under an order of the probate court, on the 20th February, 1849. Reuben Harrison, the plaintiff's husband, became the purchaser at said sale, and executed his note, with surety, for the purchase-money; but died on the 29th May, 1854, without having paid any portion of the purchase-money. After his death, the defendant, as his administrator, paid the purchase-money in full, "but no titles were ever made to said lands." "There was evidence tending to show, that the defendant, at the request of the plaintiff, did not sell the slaves belonging to the estate of his intestate, but worked them upon said land, from the — day of —, until the 7th day of February, 1857, when the plaintiff's dower was regularly assigned to her, upon proceedings instituted by her in the probate court of Dallas; and that the defendant, at the request of plaintiff, applied the proceeds of the crops raised by him on said lands in payment of the debts of his intestate; also, that plaintiff resided on said land, from the day on which her said husband died, until the 5th day of March, 1856; that she then removed to Benton, where she resided until November of the same year, and then returned to, and has lived upon said plantation ever since; and that while living on said plantation, she received her supplies of provisions for herself and children, and for her carriage-horses, from the proceeds of said plantation; but there was no evidence that she ever worked, cultivated, or rented out any portion of said lands."

"The court charged the jury, that if they found from the evidence that Reuben Harrison bought said lands at an administrator's sale, and gave his note for the purchase-money, but had not paid the purchase-money at the time of his death, and had no legal title to said lands, then his widow was not entitled to dower in said lands, and could not recover in this action for the rents of said lands." The plaintiff excepted to this charge, and took a nonsuit; and she now assigns said charge as error, and moves to set aside the nonsuit.

JNO. D. F. WILLIAMS, for appellant.
D. S. TROY, *contra.*

STONE, J.—It is settled by an array of authorities, too strong to be questioned, that marriage is a valuable consideration; and that the respective rights and claims of the husband and wife, in and upon each other's property owned at the time of marriage, stand on the same principle as the rights of other purchasers for value.—Huston v. Cantril, 11 Leigh, 136; Magniac v. Thompson, 7 Peters, 348; Barr v. Hill, Addison, 276; Ramsay v. Joyce, 1 McMillan's Eq. 236; 1 Parsons on Con. 357; Sterry v. Arden, 1 John. Ch. 261; Whelan v. Whelan, 3 Cow. 537.

It is also settled that, in the absence of an express ante-nuptial contract, when parties intermarry with the intention of fixing their domicile in a particular place, and carry that intention into effect, the law of that place determines their several rights in the property then owned by each, or afterwards acquired without change of domicile. If they subsequently remove to a new legislative jurisdiction, any after-acquisitions of property, in the absence of limitation, or a contract *inter sese,* will be governed by the laws of the new domicile. We cite, without comment, the authorities in support of these propositions.—Sand v. His Creditors, 5 Martin's La. (N. S.) 569; Lyon v. Knott, 26 Miss. 548; Depas v. Mayo, 11 Missouri, 314; Story Con. of Laws, §§ 148, 149, 150, 151, 172, 173, 174, 176, 177.

It will be observed, that this case does not raise any question on the effect of our statutes known as the "woman's laws," on the propositions above asserted. Whether these statutes, in cases coming under their influence, require the application of a different rule, we are not called upon now to consider.

Lest the generality of the expression, "property then owned," as stated in our second proposition above, should mislead, we here remark that, of course, the rule there declared does not apply to real estate situated in another jurisdiction. The right to lands is governed by the law of the place where they are situated.

This record is entirely silent on the question *when* Mr. and Mrs. Harrison intermarried. All it affirms is, that Mr. Harrison died in 1854, leaving appellant his widow. Being bound, by an unbroken chain of decisions, to indulge every reasonable intendment in favor of the ruling of the primary court, we must suppose that Mrs. Harrison's claim of dower is to be determined by the provisions of the Code, as those provisions are somewhat variant from our former legislation on the subject.

The language of the Code is: "§ 1354. Dower is an estate for the life of the widow, in a certain portion of the following real estate of her husband, to which she has not relinquished her right during the marriage : 1st, of all lands of which the husband was seized in fee during the marriage; 2d, of all lands of which another was seized in fee to his use; 3d, of all lands to which, at the time of his death, he had a perfect equity, having paid all the purchase-money thereof." It is manifest that at no time was Mr. Harrison seized in fee of the lands mentioned in the record; nor had he paid all the purchase-money. Hence, the claim of Mrs. Harrison is not supported by either the 1st or the 3d subdivision of section 1354. She must, then, base her claim on the 2d of the subdivisions, or it has no foundation.

We confess that we are unable to detect any material distinction between the provisions of the 9th section of the act of 1812, (Clay's Digest, 157, § 36,) and subdivision 2 of section 1354 of the Code, so far as they bear on this question. The act of 1812 has received a uniform construction in this court, from which we do not feel at liberty to depart. That construction is, that its operation is not confined to those estates of which one man is technically seized to the use of another, as embraced in the English statute of Henry VIII., called the statute of uses. Our statute was held to embrace all cases, where the title to lands was in another, or in the government, and the husband had such interest and claim thereto that in equity he could compel its conveyance to him. Of all such lands the widow was dowable, under the act of 1812.—Shields v. Lyon, Minor, 278; Gillespie v. Sommerville, 3 S. & P.

447; and authorities collected Reav. Digest, p. 459; Shep. Digest, p. 142.

The Code, however, renders it necessary that we should declare a different rule. If we give to the 2d subdivision of section 1354 the same construction which has uniformly been given to the act of 1812, we leave no field on which the 3d subdivision can operate. We do not feel at liberty to deprive it of all operation, more especially as the construction of the act of 1812 has never been fully satisfactory. We, then, confine the operation of the 2d subdivision of section 1354 to technical seizures to use, as understood in the English jurisprudence. It results from what we have said, that Mr. Harrison never had such a title to the lands mentioned in the record, as that his widow could claim dower in them under the provisions of the Code.

It is contended for appellant, that her claim for rent should have been maintained, even if it be conceded that she was not entitled to dower in the lands. This argument is based on section 1359 of the Code. The language of this section, considered alone, is sufficiently comprehensive to embrace all cases. If, however, we give to it the construction for which appellant contends, it places the widow, whose husband died in possession of lands to which he had not such title as would support her claim to dower, on much more favorable grounds than if her claim to dower was perfect. In the one case, she would hold, " free of rent," the homestead and entire " plantation connected therewith," without limit as to time; for dower never could be assigned to her. In the other, the heir, by having her dower alllotted to her, could reduce her possession to a life-estate in one-third of the real estate. We think section 1359 must be construed in connection with sections 1354 and 1367, and that the widow has no right to retain the premises, " free of rent," unless there was also a real estate in the husband, out of which she could have dower assigned to her.

There is, perhaps, another defect in the right of the plaintiff, as shown by this record. It does not appear from the bill of exceptions, that the *dwelling-house* and *plantation*

*connected therewith;* are those where the " husband most usually resided next before his death."—Code, § 1359.

It is further contended, that inasmuch as the seizin of Mr. Harrison was considered and necessarily passed on in the proceedings to lay off the dower of Mrs. Harrison, Mr. Boyd, the administrator, is estopped by the recovery in that case from disputing the seizin of his intestate. We do not now decide this question. Neither that record, nor the proof in this case, establishes the fact, that the lands which are the subject of this suit were the place where Mr. Harrison most usually resided next before his death. In the proceedings in dower, this latter inquiry would have been immaterial; and consequently, the doctrine of estoppal probably does not apply to the case as made by this record.— See Chamberlain v. Gaillard, 26 Ala. 504. Even if the appellant be right in the legal argument he makes on the doctrine of estoppel, it cannot aid him in this case, because of the defect of proof above noticed. We reserve our opinion on this legal question until it shall come properly before us.

It is shown in this record, that Mr. Harrison acquired all the title he ever had to these lands, long before January 17, 1853, when the Code went into operation. If his marriage with the appellant took place before that time, it may become a material question, whether her claim of dower and quarantine is to be determined by the act of 1812, or by the provisions of the Code. We do not now decide this question, but, in addition to the authorities cited above, we refer to the following, without intending thereby to intimate an opinion : Reynolds v. Reynolds, 24 Wend. 193 ; Randolph v. Doss, 3 How. (Miss.) 205, 214, 215; 1 Roper on Husband and Wife, 527 ; Torrence v. Cooley, 27 Miss. 697 ; Jackson v. Waltermire, 5 Cow. 299; Bullard v. Bowers, 10 N. H. 500 ; Stanwood v. Dunning, 2 Shep. 290; Hobbs v. Harvey, 4 Shep., 80 ; Campbell v. Knight, 11 Shep. 332 ; Collins v. Torrey, 7 Johns. 278; Sleight v. Read, 18 Barb. 159 ; White v. White, 5 *ib.* 474 ; 17 *ib.* 660 ; 4 Sandford, 461.

The judgment of the circuit court is affirmed.

NOTE.—This case was decided at the June term, 1858.