Abbey *v.* Deyo.

[ALBANY GENERAL TERM, September 7, 1863.  *Gould, Hogeboom* and *Miller,* Justices.]

————————— • ◦ • —————————

CAROLINE ABBEY *vs.* ABRAHAM A. DEYO, Jun. Sheriff, &c.

It was the purpose of the legislature, by the married women's acts of 1848 and 1849, to confer new rights of property upon the wife, separate from and independent of her husband, and to enlarge and render more fixed and certain those already existing.

By the existing statute law of this state a married woman may acquire the title to personal property by grant or purchase; and this purchase may be made in any of the ordinary modes known to the law, or to the course of business. It may be made by the payment of cash, for the property purchased, or she may buy on her own credit. And if a purchase be made by her, and the credit given to her, with the object of vesting the title in her, she will acquire thereby a title to the property in her own name and as her sole and separate property.

So the purchase may be made by herself in person, or by her authorized agent; and her husband may be that agent.

And her trade or business, while it is carried on in her own name, or for her own benefit, may, like all other trades and business, be conducted by herself personally, or through the instrumentality of others.

She may carry on the trade or business of a merchant. She may conduct it with the property and means which she has fairly acquired by purchase; and she may carry it on herself, by her personal labor and services exclusively; or exclusively through the medium of agents; or partly in each mode.

She may make her husband her agent to conduct such business. And if she does so *bona fide*, without permitting her name to be used as a cover for fraud, and intending to compensate him (or through him his creditors) and not to absorb the proceeds of his labor and earnings in the business, for

Abbey *v.* Deyo.

her own benefit, excluding his creditors therefrom, the transaction is lawful, and will be upheld by the law. GOULD, J. dissented.

Where the question to be tried is one of fact, and of intent, depending entirely upon the view which shall be taken of the transaction, as to its real purpose and intent, and there is evidence on both sides, the case should not be withheld from the consideration of the jury.

THIS was an action of replevin, brought by the plaintiff against the defendant, as sheriff, for flour, feed, grain, &c. levied upon by him under and by virtue of an execution against Stephen Abbey, the husband of the plaintiff. The cause was tried at the Ulster circuit, in January, 1863, before Justice GOULD and a jury, and the plaintiff was non-suited. It came here upon a case made under an order that it be heard in the first instance at a general term. It appears from the case that in and prior to April, 1861, Stephen Abbey did business at Rondout, for Gordon Grant, in the feed and flour business. The business was done in the name of "Stephen Abbey, agent." Grant resided at Troy, and paid no personal attention to the business, which was wholly conducted by Abbey. In April, 1861, Grant sold and transferred his interest in the stock to Z. M. North, the brother-in-law of Mrs. Abbey, the plaintiff. The defendant claims that the following facts were established by the evidence, and most of them were thus sustained. After the above transfer, the business was continued, in the same place, in the name of "Stephen Abbey, Agent;" he claiming to act as agent for his wife, Caroline Abbey. There was no evidence that the plaintiff put any money or property in the concern, and it was shown that she paid no personal attention to the business. It was managed by him, with the assistance of his son, who was under age. The goods were all bought of different merchants at Albany, on credit, by Stephen Abbey as agent for his wife. The bills of purchases were made to Stephen Abbey, agent. The sign was Stephen Abbey, agent. The bank account was kept in the name of Stephen Abbey, agent. All checks drawn for the payment

for goods, were signed Stephen Abbey, agent. All bills for goods sold to customers were made out in the same form. The goods were generally if not wholly shipped from Albany to Rondout by the barge R. F. Slack, run by Stephen Abbey. Some of the goods, when levied on, were on the barge, and the rest in the store house. The family of Stephen Abbey consisted of himself, his wife, two children, a sister-in-law, and a hired girl. There was no account kept against Stephen Abbey, at the store. There was no evidence of any agreement between him and his wife under which the business was conducted.

There was no evidence showing that the wife had any separate property, and it was claimed by the plaintiff that the husband was insolvent. The defendant justified the taking of the goods under a valid judgment and execution against Stephen Abbey.

The plaintiff gave evidence tending to prove the following facts. The plaintiff, nominally or really, commenced to carry on the business of dealing in flour, grain and hay, at Rondout, in April, 1861, and continued to conduct it until the 13th of November, 1861, when the levy was made. She did not personally attend to the business, the actual work in which was done by her husband and their son, who was under age, and the hired men. There was no evidence that she had any capital, except that there was once paid $200 on account, for some of the goods purchased for the business. The goods were purchased in Albany, by her husband, as her agent, on a credit of from fifteen to thirty days, and some of them when levied on had just arrived at Rondout, and were still on the boat. Some evidence was elicited by the defendant for the purpose of showing that the business was really that of the plaintiff's husband, and that it was carried on in her name for the purpose of protecting the property employed in it, against his creditors. The goods employed in the business, including those levied on, were sold to the plaintiff by Albany merchants, who gave the credit exclusively to her.

They knew that her husband was insolvent, and that there were judgments against him, and would not have trusted him for the goods.

*G. L. Stebbins* and *T. R. Westbrook*, for the plaintiff.

*M. Schoonmaker*, for the defendant.

HOGEBOOM, J.    It was quite possible for a married woman before the enabling acts of 1848 and 1849 to own property, both real and personal.    As to real property which came to her by descent or devise, or by deed of gift or purchase from her funds, it is quite clear by the principles of the common law, that the title to it was in her, and on her death passed to her heirs or devisees ; and that her husband did not take by surviving her.    (2 *Kent's Com.* 131, 132.)

Notwithstanding he had an interest in the property, and during the coverture an exclusive right to the rents and profits, and in case of issue the same right during his life, it was nevertheless true that the title and fee simple of the property was in the wife.    (2 *Kent's Com.* 131.    *Reeve's Dom. Rel.* 85, 3*d ed.*)

As to personal property, the general rule unquestionably was, that as to such property in possession, the husband's title to it was absolute, and as to personal property in action, he had the right by action or otherwise, to reduce the same to possession, and then it became absolutely his.    (*Reeve's Dom. Rel.* 49, 55, 3*d ed.*    2 *Kent's Com.* 135, 143.)

But even as to personal property, there never was any doubt that it could be conveyed or transferred to her so as to become her sole and separate estate, free from the debts and liabilities of her husband.    This could be accomplished by will, by a deed or writing making such transfer for such purpose, and I think by a purchase made with her funds, so arranged as not to pass into the possession of her husband.    (*Carter* v. *Carter*, 1 *Paige*, 463.    *Partridge* v. *Havens*, 10 *id.* 618.    *Hav-*

*iland* v. *Bloom*, 6 *John. Ch.* 178. *Sleight* v. *Read*, 18 *Barb.* 159. *Van Duzer* v. *Van Duzer*, 6 *Paige*, 366.) In this and other ways, the courts, and especially the courts of equity, protected the separate property of the wife, as well from her husband as from his creditors and all other persons.

Long anterior to the acts of 1848 and 1849, the right of the wife to the ownership of personal property, distinct from and independent of her husband, was thoroughly recognized in the law and enforced by the courts.

But the legislature thought proper to enlarge these rights and make them more fixed and certain, and with that view to interpose by acts of legislation. Whatever may be thought of the wisdom or policy of this species of legislation, its object and purpose can not be misunderstood, and should not be thwarted by the courts. Such purpose plainly was, to confer new rights of property on the wife, separate from and independent of her husband, and to enlarge those already existing. With this view various laws of this description were passed, from 1848 to 1860 inclusive, some of which it will be proper to consider.

The first act on this subject was passed in 1848. (*See Laws of* 1848, *ch.* 200.) The 1st section of that act secures to any female who shall thereafter marry, such real and personal property as she may own at the time of her marriage. The 2d section makes the same provision as to her real and personal property in favor of a female already married, except so far as it may be liable for the debts of her husband before incurred. This section of course recognizes the fact that she may own personal as well as real property of that description. The 2d section, as amended by the act of 1849, (*see Laws of* 1849, *ch.* 375, § 1,) provides that "any married female may take by inheritance or by gift, grant, devise or bequest from any person other than her husband, and hold to her sole and separate use, and convey and devise, real and personal property and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with

the like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband, nor be liable for his debts." Although the words "grant" and "convey" are, according to legal phrase, more aptly applied to real than to personal property, they are susceptible of being applied to either, and in this case are obviously applicable to both. Neither the words nor the sense would be satisfied without embracing both real and personal property. The counsel in this case have referred to some elementary works, showing the application of the word "grant" to purchases of or titles acquired to personal property. (*Bouv. Law Dic.* "*Grant*." *Burrill's Law Dic.* "*Grant of personal property.*" 2 *Blk. Com.* 439, 440, 441.)

By the statute law of the state, therefore, a married woman may acquire the title to personal property by grant or purchase; and this purchase may obviously be made in any of the ordinary modes known to the law or to the course of business. It may be made by the payment of cash for the property purchased, and if this cash be the property of the female, and paid with the intent to vest the title to the goods in her, can there be a doubt that she thereby acquires a perfect and indisputable title to the property? So the purchase may be *on credit*—on *her* credit; and if there be no doubt that the purchase was made by her—that the credit was given to her—that the object was to vest the title in her—and that all this was well known both to the seller and the purchaser, can there be a possible doubt that she acquires title thereby to the property in her own name, and as her sole and separate property? To hold otherwise would be to deny her any mode of acquiring property by her own act or agency. So the purchase may be by herself in person, or by her authorized agent. There is nothing in the act or in principle which when her right to act as a feme sole is recognized, forbids her employment of an agent, any more than it forbids the employment of such agent by any other person. So long as the transaction is thus understood by the vendor and by

the vendee and by the agent, it seems to me the conclusion is irresistible.    And I know no reason why she may not employ or at least use her husband as her agent to make such purchase, provided it be done honestly and in good faith. For the purpose of such a purchase she is regarded as a feme sole, and as a person distinct from and independent of her husband, and he stands in the same relation to her.    It is immaterial who such agent may be, provided he be a person of sufficient intelligence and competence to make a valid contract.    The act of agency may be performed for compensation express or implied, or it may be gratuitous, and in either case it is valid.    If gratuitous, it can not interpose any obstacle to the passage of the title from the vendor to the intended vendee.    If worthy of compensation it may create an obligation to pay a *quantum meruit* to the husband of which his creditors may avail themselves, but it can not prevent the transfer of the title to her.    If agreed to be for compensation between the husband and wife, such agreement is either void or valid.    If void, it does not destroy the agency nor affect the title to the property, but only the title to the compensation.    If valid, as I am inclined to think it is, it entitles the husband to that compensation.    If not paid at the time, there may be a technical difficulty in the way of the husband's bringing a suit to recover it directly against his wife. If there is, that can not destroy the wife's title to the property.    The husband may receive the amount of it out of the wife's funds which come into his hands ; or he may transfer the right of action to a third person ; or his creditors may obtain the benefit of it by action.    I do not see that it can operate to bar her acquisition of title.

It is no answer to this to say that such proceedings, if authorized, will give countenance and encouragement to fraud. I reply that the transaction is authorized by law, and the fraud is always open to proof, and if proved will vitiate the transaction.    If the transaction be a mere cover—if the object be to use the wife's name to cover the husband's

property, parties are at liberty to show the facts, and thus to nullify the transaction.

But the legislature have gone farther. The act of 1860, (*Laws of* 1860, *ch.* 90,) is more comprehensive than those which preceded it. The first section recognizes the various sources of title already referred to, viz: by descent, devise, bequest, gift, grant, and also such as she acquires by her trade, business, labor or services carried on or performed on her sole or separate account, and confirms that title in stronger terms than those used in the previous acts. The second section authorizes her to bargain, sell, assign, and transfer her separate personal property, and carry on any trade or business, and perform any labor or services, on her sole and separate account, and declares the earnings thus made to be her sole and separate property, which may be used or invested by her in her own name. Section seven authorizes her to sue and be sued in all matters having relation to her property. Section eight declares that no bargain or contract made by her in respect to her sole and separate property shall be binding on her husband. These two latter sections were still farther enlarged by an amendment made in 1862. (*Laws of* 1862, *ch.* 172.)

By the provisions of these acts, the married woman's right to acquire and dispose of property, and to make bargains and contracts in relation to it, in almost any mode known to the law or to the practice of the commercial community, would seem to be fully recognized. There is a qualified exception in regard to real estate, in sections three to six inclusive, which is not necessary to be here considered.

I have already argued that in acquiring property by purchase, she may do so through the medium of an agent, and that agent her husband. So I think in carrying on her trade or business, while it is done in her own name or for her own benefit, it may, like all other trades and business, be carried on by herself personally, or through the instrumentality of others. There is no greater disability imposed upon her

than upon any other feme sole, and there is no reason or principle why there should be. Suppose she carries on the trade of a blacksmith, must she personally shoe the horses? If she carries on the business of a farmer, must she personally hold the plow or handle the spade? If she carries on the trade of an ironmonger, must she personally lift, receive, and discharge every ponderous bar of that material? If she carries on the trade in dry goods and groceries and provisions, must she personally handle every bale of cloth, every hogshead of molasses, every barrel of flour? May she have no clerks whatever? Must her business, by force of the statute, be so limited that she must attend to it all in person and exclusively?

Let it not be said that she may employ others but must also be present herself. There is no such limitation in the law. If she may employ others to do a part of the labor, she may employ them to do it all. And if they do it all, it is not required by the law that she should legalize the place and the business by her personal presence, at the peril of its being declared illegal and fraudulent, if she absents herself.

So also, as in the purchase of property, she may employ her husband as her agent. For the purposes of the business she is a feme sole, and he is a man sole. He may act for her like another person, and whether he is entitled to his compensation, and if so, how he is to obtain it, is not necessarily involved in the present issue.

It is said by this process she acquires the benefit of his labor and earnings, and his creditors lose them. Not so. She and her property are doubtless accountable in a proper form of proceedings for the value of those services. It may even be granted that it may be difficult to devise a convenient remedy by which these liabilities may be enforced. This would not, in my judgment, be a sufficient answer to the provisions of law, which allow her to acquire property by grant, and to carry on a trade and business for her own benefit.

Abbey *v.* Deyo.

"These acts demand a liberal construction, to carry into effect the beneficent intent of the legislature." "The statute gives her the property, and she takes it with all the incidents of ownership, absolute and unqualified." Such is the language of the court of appeals in *Sherman* v. *Elder*, (24 *N. Y. Rep.* 384, 385.) The general course of reasoning in that case supports the construction which I have given to these acts. Other portions of the opinion may have been very appropriate as applied to the facts of the case before the court, but considered as having a universal application, are liable, I think, to some criticism. The true question in all these cases is, upon the facts of each case, is there sufficient evidence of a fraudulent intent? It is a question of fact for the jury, under all the circumstances of the case.

The law gives a married woman a right to purchase personal property; to purchase it for cash; to purchase it on credit; to purchase it personally; to purchase it through the medium of an agent; to do it through the agency of a third person; to do it through the agency of her husband. If the purchase be fair, the intent made known, the agency disclosed, and the transaction honest, her title to the property is unquestioned—is indisputable.

She may intend to employ the property thus purchased in trade, and in trade for the benefit of her husband, by the fraudulent use of her own name. Until she does so, the property is her's and intangible by his creditors. She may carry on the trade or business of a merchant; she has a right to do so; she may carry it on with the property and means to which she has thus fairly acquired title. She may carry it on herself by her personal labor and services exclusively; or exclusively through the medium of agents; or partly in each mode; and it is lawful. She may make her husband her agent, and if she does it *bona fide*, without permitting her name to be used as a cover for fraud, if she carries it on for her own benefit, employing him fairly as her agent, and willing and intending to compensate him, or through him his

creditors, and not to absorb the proceeds of his labor and earnings in her business for her own benefit, excluding his creditors therefrom, the transaction is lawful, and will be upheld by the law.

No doubt such proceedings should be watched with vigilance, perhaps regarded with suspicion, and subjected to a severe scrutiny. No doubt they give great opportunities for fraud, unless thus closely watched and rigidly scrutinized; but there is no other way than to subject them to the ordeal of a fair trial, and the examination of a just and intelligent court and jury. When this is done, generally the right result is attained.

These remarks are sufficient to dispose of this case, and to show that the judge erred in withholding the case from the jury. It was emphatically a question of fact and intent. It depended entirely upon the view which they should take of the transaction as to its real purpose and intent, and which it was their business to extract from the testimony before them. It is manifest that there were circumstances about the case—the use of the husband's name as agent in the business, the wife's name not appearing—the almost exclusive transaction and superintendence of the business by him—the employment of his and his son's services in the business of the wife and the mother, which might justly challenge their watchful scrutiny. But there were also other circumstances favorable to the plaintiff. The public avowal of the agency; the purchase of the goods in her name; the application for the purchase in her name; the intent of the vendors to give credit to her, and to her exclusively; their refusal to sell to the husband on account of his known insolvency; their reliance entirely upon her credit and responsibility; the fact that a portion of the property thus purchased had never as yet gone into the business. These and other circumstances, not now necessary to be referred to, are conclusive to my mind to show that it was not a case proper to be withheld from the consideration of the jury, but eminently fit to be submitted to them.

The defendant's counsel demanded this in various forms, and excepted to the judge's refusal to comply with their requests.

I think that the judge at the circuit erred in his disposition of the case, and that a new trial should be granted, with costs to abide the event.

MILLER, J. concurred in the result of the foregoing opinion.

GOULD, J. dissented.

New trial granted.

