# King *v.* King *et al.*

*Bill in Equity to allot Dower, &c.*

1. *Dower; of what estate wife dowable.*—The use or equity of which the widow is dowable, like the legal estate of which she is dowable, is a use or equity residing in the husband; if there is no legal estate, no use or equity, residing in the husband, the wife is not dowable.

2. *Fraudulent conveyance; who can not assail.*—A conveyance to hinder, delay and defraud creditors, is voidable as to them, but valid as to the parties to it; and where by such a conveyance the husband, without intending any fraud on his future wife, divests himself of all estate and use in the lands, nothing is left out of which dower can be carved; and the future wife claiming through him at his death, can not dispute the validity of the conveyance, or have a court of equity engraft any use or trust on the lands, based on the husband's fraud, out of which to carve dower.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

The appellant, Susan W. King, filed this bill primarily to obtain dower in lands, which her husband once owned, and also to have his estate settled and distributed. Appellants own children and those of her husband by a former wife, are made defendants.

The material allegations of the bill are substantially as follows: John W. King and appellant were married in Mobile, Alabama, on the first day of June, 1861, and they lived together as man and wife until his death, the 17th day of February, 1876. No administration has ever been had on his estate. Said King, before his second marriage, had accumulated property, but by reason of being surety on an official bond of one Chamberlain, as tax-collector of Mobile county for the year 1845, and of suits pending against him on said bond, he took title to the property acquired in the names of various persons; sometimes in the name of his first wife, Mrs. Christine King, and sometimes in the names of one Hugh Monroe or William Brooks, as trustees for the use of his then living children. The bill describes each parcel of land purchased by King, makes the deeds to the exhibits, and alleges that immediately upon the purchase

of each piece of property, John King took possession of the same as owner, making improvements and repairs thereon, with his own money, and receiving the income thereof, as his own; that neither said Monroe nor said Brooks ever had or held possession of said land, or in any manner exercised any acts of ownership over said property, either as trustees or otherwise; that the said Monroe and Brooks received said deeds, made to them respectively, with full knowledge that John King bought and paid for said lands, with his own money, and that the titles were made to them to prevent the property being seized, or made liable for King's liability as surety on the official bond of Chamberlain on which he had been sued; that said deeds were not made, or intended to be made, as an advancement to the beneficiaries named therein, to the exclusion of King's after born children, or his widow, but that said conveyances were so made to more securely protect and keep said property from being seized and subjected, to the alleged liability on which he was sued, and for no other purpose.

The prayer was, that the Chancery Court would take charge of and distribute the property to the parties entitled to it; that the property, the titles to which were taken in the names of Monroe and Brooks, be decreed to the parts of the assets of said estate, and be distributed as such; that dower be assigned to complainant in said lands, and for general relief.

The children of John King by his first wife demurred to the bill and assigned thirteen grounds of demurrer to the same, and among others; 1, " the bill shows that the purchase of said property by said King, in the name of and to the use of his wife and their living children was to prefer them to creditors, with fraudulent intent, and can not therefore, be impeached or set aside by said King, or any claiming under, by, or through him.   2. Because the complainant seeks to take advantage of John King's avowed wrong and turpitude, while showing her privity with, and claim under him."

The chancellor sustained the demurrer and dismissed the bill, and his decree is now assigned as error.

TOMPKINS & FAITH, for appellant.

STEWART & PILLANS, contra.

BRICKELL, C. J.—Dower is defined by the statute, as " an estate for the life of the widow, in a certain portion of

[King v. King.]

the following real estate of her husband, to which she has not relinquished her right during the marriage : 1. Of all lands of which the husband was seized in fee during the marriage ; 2. Of all lands of which another was seized to his use ; 3. Of all lands to which at the time of his death, he had a perfect equity, having paid all the purchase-money thereof."—Code of 1876, §2232. Dower at common law, existed only when the husband was seized of an estate of inheritance, and died in the life of the wife. Three things were necessary to its consummation : marriage, seisin of the husband, and his death. The seisin must have been of a freehold in possession, and of an estate of immediate inheritance in remainder or reversion.—4 Kent. 34–39. The designation of dower at common law is thus given by Mr. Bishop : " Dower is that freehold estate which is carved to the widow out of the real property whereof the husband was seized at any time during the coverture, of a nature to be inherited by an issue, which she might have had, being usually made to cover one-third of the same for her life, as her right in law growing out of the marriage, and his seisin and death." 1 Bish. Mar. Women, § 243. The right subsists in virtue of the estate of the husband, and is subject to any infirmity or incident which the law attaches to that seisin, or either at the time of the marriage, or at the time the husband becomes seized. The first subdivision of the statute refers to the estates of which the wife was dowable at common law— estates of which the husband had the actual beneficial legal seisin during the marriage. The second subdivision refers to estates of which he had not the legal seisin, but of which another was seized to his use—the technical seizure to use as known in English jurisprudence.—Harrison v. Boyd, 36 Ala. 203. The simplest form of which is, " where the legal estate of lands is in A., in trust, that B. shall take the profits, and that A. will make and execute estates according to the direction of B."—4 Kent. 316. The third subdivision refers to cases of purchase by the husband, fully completed at his death, by the payment of the purchase-money, clothing him with an unconditional right to demand from the vendor a conveyance of the legal estate.—Lewis v. Moorman, 7 Port. 522; Crabb v. Pratt, 15 Ala. 483 ; Boyd v. Harrison, 36 Ala. 533. Tho use, or the equity of which a widow is dowable, is, as the legal estate of which she is dowable— a use, or equity, residing in the husband. The dower is carved from the use or equity, as it is carved from the legal

[Ex parte Knight.]

estate, and with the remainder or reversion descending to the heirs, comprehends the whole use or equity. If there is no legal estate, no use, or equity, residing in the husband—if before marriage, by any conveyance, the one or the other, is divested, and such conveyance is not intended as a fraud on the wife,—if its divestiture is by conveyances intended to hinder, delay and defraud the creditors of the husband, the wife is not dowable. There is no estate—no use—no equity residing in the husband from which dower can be carved—no estate, use, or equity, which can descend to the issue of the marriage.— *Whithed v. Mallory*, 4 Cush. 138. Conveyances in fraud of creditors are not void—they are voidable only at the election of creditors, to the extent which is necessary to satisfy their demands, or if the fraud is actual, as to the subsequent purchasers. As to the debtor instrumental in their contrivance and execution, they are as operative, as if they were not infected by fraud. He is estopped, as are his heirs, or those claiming merely in succession to him, from disputing their validity.

The whole theory of the bill filed by the appellant, is, that the conveyances of the premises in which she claims dower, were fraudulent as to the creditors of her husband, and therefore void. They were voidable as to the creditors, but not voidable as to the husband, nor as to strangers having no right or interest to be affected by them. At the instance of the husband, a court of equity could not enforce any trust or use for his benefit springing out of these conveyances. The maxim *in pari delicto melior est conditio possidentis*, applies in courts of equity, as well as in courts of law ; and either court, leaves a debtor guilty of fraud on his creditors, to the consequences of that fraud.—*Brantley v. West*, 27 Ala. 542. As there can be no use or equity recognized in the husband in opposition to these conveyances—as such use could only be raised by permitting him to allege his own turpitude, there is no use or equity of which the appellant is dowable. The only question really presented is her right of dower, and that was properly adjudged to be unfounded.

Affirmed.