ANIMA and AWANA, Partners doing business under the name of NAM CHONG AND COMPANY *vs.* LAU KONA.

EXCEPTIONS.

HEARING, JANUARY 4, 1894.　DECISION, FEBRUARY 8, 1894.

JUDD, C.J., BICKERTON AND FREAR, JJ.

A woman who married and acquired land prior to the passage of the Married Woman's Act (Ch. XI, Laws 1888) may after its passage execute without the consent of her husband a valid lease of such land so as to entitle the lessee to possession after the death of the husband.

OPINION OF THE COURT, BY FREAR, J.

Ejectment to recover possession of certain land in the Ahupuaa of Hanapepe, Kauiloa, Waimea, Kauai, the plaintiffs claiming title under a lease from Queen Dowager Kapiolani.

The Circuit Court, Fifth Circuit, jury being waived, found the following facts, which are supported by the evidence: The Queen Dowager Kapiolani has been for twenty years and now is, by admission of the parties for the purposes of this case, owner of the premises in dispute ; on September 10th, 1888, she executed a lease of these premises to the

plaintiffs for ten years beginning January 1st, 1892, at an annual rental of $600 payable semi-annually; this lease was acknowledged and recorded; about the time of its execution, the plaintiffs paid. $300 as six months' rent thereunder, and on July 11th, 1892, paid $300 rent to the lessor's agent and on January 10th, 1893, $300 rent; at the time of the execution of this lease, the defendant was in possession of the premises under an alleged lease from the then agent of the lessor, dated June 27th, 1881, for ten years, and had possession and paid rent thereunder for the term, and at its expiration continued, and still is, in possession; on January 16th, 1893, he obtained another lease of the same premises from the lessor's agent and paid rent thereunder; Kapiolani long before the date of the first lease, was married to the late King Kalakaua and continued in coverture until his death, January 20th, 1891.

The Circuit Court held that under our statutes "a married woman during her coverture cannot lease her real property for a term of years without the written consent of her husband, and that the lease by Queen Dowager Kapiolani to the plaintiffs is void," and rendered judgment for the defendant.

The main question raised by the exceptions is whether a woman who married and acquired land before the passage of the Act "Relating to the Property and Rights of Married Women" (Chapter XI. Laws of 1888), could after its passage execute without the consent of her husband a valid lease of such land, so as to entitle the lessee to possession after the death of the husband.

Prior to the passage of this Act, the husband "by virtue of his marriage" was "the virtual owner, except otherwise stipulated by express marriage contract, of all movable property," and had during the coverture "the custody, use and usufruct, rents, issues and profits of all property of a fixed and immovable nature, belonging to his wife before marriage, or accruing to her after marriage." Civil Code, Sec. 1286. The wife was "deemed for all civil purposes, to

be merged in her husband, and civilly dead." She did not " without his consent, unless otherwise stipulated by anterior contract, have legal power to make contracts, or to alienate or dispose of property," with certain exceptions not applicable to the present case. Ib. Sec. 1287.

Under these sections of the Code a husband had an estate by marital right for the joint lives of himself and his wife in the lands of his wife, and a married woman was incapable of contracting; her lease was absolutely void, as at common law.

The Act of 1888 provides, among other things, as follows :

" Section 1. The real and personal property of a woman shall, upon her marriage, remain her separate property, free from the management, control, debts and obligations of her husband ; and a married woman may receive, receipt for, hold, manage and dispose of property, real and personal, in the same manner as if she were sole : provided, however, that no sale or mortgage of her real estate shall be valid without the written consent of her husband."

" Section 2. A married woman may make contracts, oral and written, sealed and unsealed, in the same manner as if she were sole, except that she shall not be authorized hereby to make contracts for personal service without the written consent of her husband, nor to contract with her husband."

" Section 13. Nothing in this Act contained shall affect any rights of property which have already accrued under any law heretofore in existence."

Counsel for the defendant contends that the lease in question is void notwithstanding this Act for the reasons that a lease for a term of years is a sale within the meaning of the proviso of Section 1, and that the Act applies only to women married, or at least only to property acquired, after its passage.

The term sale may well be held to include a lease under some statutes, as for instance, our statute of frauds, where such appears to be the manifest intention of the legislature. In the statute under consideration, however, the word

evidently was intended to be used in its more restricted and more usual sense. One object of the statute was to give a married woman wide control over her property, both real and personal. The clause to which the proviso is an exception enables her to "dispose of her property, real and personal, in the same manner as if she were sole." This covers all kinds of disposition. Sales and mortgages of real estate are then expressly excepted. If "sale" includes "lease," then what disposition of real estate does it not include? And what is there left of the clause which enables a married woman to dispose of real property in the same manner as if she were sole? The exception cannot be co-extensive with that to which it is an exception. The legislature apparently considered that even a mortgage might not be covered by the term sale, for mortgages also are expressly excepted by this proviso. In *Sullivan vs. Barry*, 46 N. J. L. 1, under a proviso that no "conveyance of her real estate, or any instrument encumbering the same" should be executed by a married woman without her husband joining therein, the Court said, "Neither the word 'convey' nor 'encumber,' according to its ordinary signification, is expressive of the act of creating a tenancy for years in lands. The former of the terms is appropriate to the transfer of a title to a freehold, the latter to putting the property in pledge for the payment of money," and, in view of the general purpose of the statute to give a married woman the exclusive use and benefit of her realty, excepting the right to convey or mortgage it, "it would be a most violent presumption that the legislature meant to say that she should be permitted to occupy and cultivate her lands in person, independently of the consent of her husband, but that she should not, in the absence of such concurrence, turn them to profit through a renting in the ordinary mode." The word "conveyed" was similarly construed in *Perkins vs. Morse*, 78 Me. 17. The Court said, "A lease may be in a sense a conveyance, but such is not the commonly accepted nor the accurate meaning of the term. When we say, premises are leased we generally mean that the use of them

is transferred; and by the term conveyed that the title is deeded. * * * A married woman is not limited in the management of her property. * * * How can she manage this property or control its income, when not occupying it, unless she can rent it?" The reasoning of these decisions applies to the present case, although the word "sale" is used instead of "conveyance."

As to whether the statute relates only to subsequent marriages or subsequently acquired property, it may be stated as a general rule established by numerous decisions, that statutes of this kind may relate to prior as well as subsequent marriages, but that they cannot divest vested rights. See 2 Bishop on Married Women, Secs. 54–56; Cooley, Const. Lim. 6th Ed. pp. 440–2; and cases *infra*. As to what marriages are embraced in the Act, the question is, what was the intention of the legislature, as shown by the words of the Act; as to what rights are excepted from the operation of the Act, the question is, what rights are vested.

Our statute relates to both prior and subsequent marriages. It may be conceded for the purposes of this case, that, as argued by counsel, the words, "shall, upon her marriage, remain her separate property," in Section 1, refer only to future marriages. But these words affect only the first part of Section 1, which does not affect the present case. The latter part of the same section makes no distinction between prior and subsequent marriages. The same is true of the other parts of the Act,—conferring upon married women the power to contract, to sue and be sued, to act as executrix, &c. These all refer to future transactions by women whether married before or after the passage of this Act. The fact that vested rights were expressly excepted from the operation of the Act also shows an intention to include women already married, for otherwise there would be no vested rights to be excepted. Further, if the first part of Section 1 makes the whole Act refer only to future marriages it also makes it refer only to property acquired before marriage, and not to property acquired during coverture even by

women afterwards married, which was evidently far from the intention of the legislature.

As to vested rights, since the land was acquired by the wife before the passage of the Act, the husband had already become invested with an estate in the land for the joint lives of himself and his wife. This could not be taken from him. But had he any vested right in her reversion, or in her incapacity to contract? A husband may have many valuable rights which are not vested. His right, if any, to acquire an estate by virtue of his marriage in the lands which may afterwards be acquired by his wife, his right to become a tenant by the curtesy (as well as her right to dower), his right to inherit from her, are all immediately upon marriage valuable rights, but do not become vested until the happening of certain contingencies, until the happening of which, as settled by numerous decisions, these rights may be taken away by statute. So the rights and privileges, if they may be called such, which a husband may enjoy by reason of his wife's disability to contract, or to sue or be sued, &c., are not vested rights. They are incidents of the marriage status, which is quite different from the marriage contract and depends upon the law for the time being which may be altered from time to time, subject only to vested rights. See authorities *supra* and *Sleight vs. Read*, 18 Barb. 164; *Pritchard vs. Bank*, 28 Am. Dec. (La.) 132; *Rugh vs. Otten-heimer*, 6 Or. 232.

In brief, assuming for the purposes of this case, that the Queen Consort had only the same rights as other married women, the King had a vested right in the land in question for their joint lives; she could not by executing a lease divest him of his right, and the legislature could not, and did not attempt to give her power to do so; but she had a vested reversion in the land to take effect in possession upon his death; he had no vested right in this reversion; she had by Section 1 of the Act of 1888, power to dispose of this reversion by lease, besides power by Section 2 to make contracts, oral or written, sealed or unsealed, as if sole, with certain

exceptions which do not apply to this case; her power thus to dispose of her property and to contract was constitutionally given to her by the legislature without interfering with his vested rights. Her lease was therefore valid. As between the lessor and lessees, it was good as a contract from the time of its execution and delivery, and, the King having died, the lessees became entitled to the possession of the demised premises at the time when the term was by the provisions of the lease to commence. If the King had continued to live, the lease would have been subject to his rights, as between him and the lessees. The question is not whether the lease was void or voidable, but whether it was void or valid, and we are of the opinion that it was valid, so far as the lessor's power to execute it is concerned.

In *Parry vs. Kelley*, 52 Cal., 334, Mrs. Kelley, while covert, executed a mortgage of community property. By statute, the community property was not liable for her contracts made after marriage unless secured by pledge or mortgage thereof executed by the husband, but she had power to enter into any engagement as if unmarried. Her husband afterwards died and she inherited a share of the mortgaged property. The court held that while she had at the date of the mortgage no title on which she could create a lien, yet that since she had power to make a mortgage as if unmarried the mortgage was good as a contract, and that her interest afterwards acquired by descent inured to the benefit of the mortgagee. So in the case at bar, if the lessor had had no title at the date of the lease, the lease would nevertheless be good as a contract, and if she had afterwards acquired title, the lessees would be entitled to possession. But this is not a case of "after acquired property;" for the lessor already had, at the date of the lease, the title to the reversion.

In *Hershizer vs. Florence*, 39 Oh. St., 516, the defendant, a woman, married and acquired certain real estate prior to the Act of 1860 which placed her property under her sole control, and the amendment of 1866 which enlarged her power to

contract with reference to her separate estate and rendered such estate liable to execution in actions against her. In 1867 she became surety upon certain promissory notes. Her husband had acquired by virtue of his marriage a vested right in the real estate prior to the passage of the Act. The court held that, subject to the husband's vested right, " the notes are a charge upon the wife's estate, which can be sold, if necessary, to pay them." In other words, she could by contract made after the passage of the. Act, charge her reversion in the estate acquired before its passage.

In *Farr vs. Sherman*, 11 Mich., 33, the marriage and acquisition of the land by the wife, took place before the passage of the Act of 1855. Soon after its passage she conveyed the land without the knowledge or consent of her husband. Prior to the passage of the Act, her sole deed was void. By the Act, she was given power of alienation as if sole. The husband died before the action, which was ejectment, was brought. The court held that the deed was valid, saying, " whether the husband, if living with her, or surviving her, may not have rights adverse to the claim of her vendee to possession, and superior to that claim during the life of such husband, is a question not involved in this case; certainly no one but the husband can dispute the plaintiff's claim or title ; and as the husband is dead, the right of the plaintiff to the possession is perfect."

Plaintiff's counsel argued at some length that the Queen Consort had power to execute the lease in question irrespective of the powers conferred upon married women by the Act of 1888, on the ground that her status was different from that of other married women, but it is unnecessary for us to consider this or the other points argued by counsel.

The exceptions are sustained for the above reasons, and a new trial is ordered.

*W. A. Kinney* and *J. A. Magoon*, for plaintiffs.

*A. S. Hartwell*, for defendant.